N. K. FAIRBANK CO. v. WINDSOR et al.

(Circuit Court of Appeals, Second Circuit. July 1, 1903.)

No. 161.

1. EQUITY—POWER OF COURT TO REVISE INTERLOCUTORY DECREE.

An interlocutory decree adjudging that defendant was chargeable with unfair competition, and directing an accounting for damages and profits, remains under the control of the court, and subject to revision on the merits, until the entry of a final decree.

2. UNFAIR COMPETITION—GROUNDS FOR RECOVERY OF DAMAGES—FRAUDULENT INTENT.

Damages and profits for unfair competition in trade are recoverable only on the ground of intentional fraud, which must be found either from direct proof, or by inference from the facts shown; and such a finding by inference is not warranted where defendants purchased, with the other property of an insolvent corporation, a quantity of cartons, the use of which had been determined by a Circuit Court, not to constitute unfair competition as against complainant, and used the same until the decision of such court was reversed, when they at once ceased such use.

Appeal from the Circuit Court of the United States for the Western District of New York.

This cause comes here upon appeal from a final decree of the Circuit Court, Western District of New York, which adjudged that defendants pay to complainant $2,173.26, as gains, profits, and advantages fraudulently diverted from complainant to defendants, together with master's fee and costs. The facts are set forth in the opinion.

For opinion below, see 118 Fed. 96.

Tracy C. Becker, for appellants.

Archibald Cox, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. Some time prior to 1890 complainant began the manufacture of a new variety of soap powder, which it called "Gold Dust," and put on the market in a distinctive form and style of package. It spent large sums of money in advertising, and thereby created a large demand for the powder in every state and territory of the United States. In 1892 or 1893 a corporation known as the R. W. Bell Manufacturing Company began to make a soap powder containing the same constituents, and offered it on the market in competition with complainant's. Prior to that time it had manufactured a soap powder, which it marketed in distinctive packages; but, when the

¶ 1. See Equity, vol. 19, Cent. Dig. § 1027.

¶ 2. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

formula was changed, the persons who conducted the affairs of the Bell Company made changes in its style and form of package. Of these this court said (Fairbank Co. v. Bell Co., 77 Fed. 869, 23 C. C. A. 554):

"It seems impossible to escape the conviction that the new form of package was devised with a clear intent to simulate, to a greater or less extent, the complainant's package."

And we added that:

"Although we are satisfied that defendant's new form of package was devised with an intent to produce a package resembling complainant's, the continued use of such package should not be enjoined unless the similarity between the two is of a character to convey a false impression to the public mind, and to mislead and deceive the ordinary purchaser."

The Fairbank Company sued the Bell Company for unfair competition. The suit came on for trial in the Northern District of New York. That court reached the conclusion that, whatever resemblance there might be, there was no probability that a buyer of ordinary prudence would be imposed upon by the Bell package, and on January 8, 1896, entered a decree dismissing the bill. 71 Fed. 295. The complainant appealed to this court, which on January 5, 1897, reversed the Circuit Court, holding that the Bell Company had intentionally and fraudulently devised a form and style of package which so closely resembled complainant's as to constitute unfair competition, and to mislead and deceive the ordinary purchaser. Fairbank Co. v. Bell Co., supra. Prior to this the Bell Company had become financially embarrassed, a receiver of its property had been appointed, and in July, 1896, he sold to the defendants a large quantity of its assets, including a quantity of the paper boxes or cartons, which, when put together, constituted the packages complained of in the suit against the Bell Company. Defendants took a lease of the old soap factory of that company at Buffalo, and proceeded to manufacture soap powder, selling the same in said boxes or cartons, until the mandate of this court in the Bell Case was filed. Thereupon defendants promptly ceased such manufacture and sale.

On March 31, 1897, the suit at bar against Windsor and his partner was begun, the bill alleging that since July 1, 1896, defendants have unlawfully, intentionally, and fraudulently prepared, put up, and sold soap powder in the form and style of package complained of. Issue was joined and the cause came on for trial on November 22, 1897. The facts were stipulated; it being admitted that between June 1, 1896, and January 5, 1897, defendants sold soap powder in packages which were in every way the same packages as those referred to in the decrees against the Bell Company. The court adjudged that, between the dates named, defendants entered into an unlawful competition with the complainant, and that defendants' use of the packages described "constitutes an unlawful and inequitable competition in business." It decreed an injunction, and "an account of the gains, profits, and advantages which have been fraudulently diverted from the complainant to the defendant." The defendants did not appeal from this decree. Before the master they contended that there could be no recovery of damages or profits for the period during which the de-

cree of the Circuit Court remained in force, which held the packages not to be such a simulation of complainant's package as to constitute an unlawful and inequitable competition. The master overruled this contention, as he was bound to do under the decree which appointed him. The same point was presented to the Circuit Court at final hearing by exception to the master's report, but the report was confirmed in all respects, and final decree entered as above stated.

Where there has been an infringement of a patent, damages and profits may be recovered, if the articles have been marked "Patented," as the statute requires, although no infringement were intended, and the defendant was even ignorant of the existence of the patent. Hogg v. Emerson, 11 How. 587, 13 L. Ed. 824; Emerson v. Simm, 6 Fish. Pat. Cas. 281, Fed. Cas. No. 4,443; Walker on Patents, § 569. The complainant contends that a like rule should be applied here. We do not agree with him. As to what should be the rule where there has been an unintentional copying of a registered technical trademark, we need not discuss, because in the suit at bar there is no question of trade-mark. Relief is sought only upon the theory of unfair competition, and there can be no recovery unless the court is satisfied that there has been an intent on the part of defendants to palm off their goods as plaintiff's. In many of these unfair competition cases the fraudulent intent is inferred from the facts, sometimes against the sworn protestations of the infringer that he was trying to differentiate his packages from those of the complainant, not to simulate them. But in all cases where there has been recovery, intentional fraud has been found. In the case at bar it will be noted that defendants did not design the offending package. The various details of change from an earlier form and style of package, which in the Bell Co. Case were found to be so illuminative of an intention to confuse and to divert trade, do not affect these defendants. They bought the materials for making packages, which a court of competent jurisdiction had decided did not resemble complainant's packages sufficiently to constitute unfair competition. They continued making and selling such packages only while that decision stood, and upon its reversal they at once desisted. Whether that decision was sound or not is immaterial. It would be straining the doctrine of inferred intent beyond all reasonable bounds to hold that one who bought, made, and sold while that decision between the original manufacturer and the designer of the package remained in force, intended to enter into "an unlawful competition" with complainant. See, also, Weed v. Peterson, 12 Abb. Prac. N. S. 178. We are clearly of the opinion that, upon the facts in proof, complainant was not entitled to recover damages or profits. And it was competent for the Circuit Court at final hearing to make such a disposition of the cause, notwithstanding that the interlocutory decree found unlawful competition, and ordered recovery of damages and profits. At final hearing all of the previous interlocutory orders in relation to the merits were open to revision, and under the control of the court. Fourniquet v. Perkins, 16 How. 82, 14 L. Ed. 854; Steam Stone-Cutter Co. v. Sheldon (C. C.) 21 Fed. 875; American Diamond Drill Co. v. Sullivan Co. (C. C.) 21 Fed. 74.

In view of the unusual character of the litigation, and the defendants' unnecessary delay in presenting their objections to the court, we think the decree should stand as to the master's fees and the costs of the Circuit Court. The decree appealed from, however, should be modified by striking out so much of it as affirmed the report of the master, and directs the payment of $2,173.26 costs.

Decree reversed and cause remanded, with instructions to decree in conformity with this opinion.

## Petition for Reargument.

(August 5, 1903.)

PER CURIAM. The appellee misunderstands the scope of the decision. The findings of fact by the court at interlocutory hearing are in no way disturbed. It is still "ordered, adjudged, and decreed" that the defendants, without right, put up and sold packages in infringement of complainant's, and that complainant is entitled to an injunction against the continuance of such acts. The Circuit Court, however, did not, at the interlocutory hearing, where judgment was entered by consent, undertake to fix the amount of damages and profits. Therefore that question was open, upon the record and proofs, before the master and when the cause came on for final hearing. Being open before the Circuit Court at final hearing, where decree was not entered by consent, but was opposed, the same question was open for review here.

Petition for reargument is denied.