DR. A. REED CUSHION SHOE CO., Limited, v. FREW et al.

(Circuit Court, W. D. New York. January 6, 1908. On Settlement of Decree, February 14, 1908.)

No. 291.

1. TRADE-MARKS AND TRADE-NAMES—RIGHT TO PROTECTION—NAME OF PERSON.

A prior right to a trade-name under which a business is conducted and good will established, even if it be the name of an individual, will be protected against another of the same name who uses it to pass off a fraudulent imitation as the goods of the one first acquiring a right to its use.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 78–88.]

2. SAME—UNFAIR COMPETITION.

One Adam Reed invented and patented a cushion sole for shoes, and the patents and a registered trade-mark of a cushion shoe in connection with the name "Dr. A. Reed's" were assigned to complainant, which established a number of stores for the sale of such shoes, and expended large sums in advertising and building up a trade in the same under such name. Subsequently, Reed obtained other patents for cushion soles, under which defendant corporation, of which he became president, began to make shoes, which it sold, using upon its cards, labels, shoe straps, and advertisements the words "Dr. A. Reed, Patentee," also printing upon its labels and boxes notices that such shoes were not the "Dr. Reed Cushion Shoe" made under former patents, but were covered by later improved patents. It was shown that complainant's shoes were ordinarily known and distinguished by retail purchasers merely as the "Dr. Reed" shoe. Held, that defendant, by using such name, was chargeable with unfair competition and a fraudulent invasion of complainant's prior acquired rights, there being no business reason for such use unless to obtain the advantage of the reputation of complainant's shoe by confusing or misleading purchasers.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 78–88.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

3. SAME—INFRINGEMENT—RIGHT TO ACCOUNTING FOR PROFITS.

A defendant will not be required to account for the gains and profits made by an unfair competition where, under a prior decision between the parties, it was justified in believing that with certain changes, which it made, it would not be chargeable with an unlawful invasion of complainant's rights, nor where there is grave doubt whether such proof could be made as to entitle complainant to a substantiated recovery.

In Equity. On final hearing.

Archibald Cox, for complainant.

George C. Miller, for defendants.

HAZEL, District Judge.   This bill is to restrain unfair competition. in trade.   The principal question involved is whether the defendants may lawfully use the name "Dr. A. Reed," or equivalent designations, upon their cards, shoes or shoe straps, boxes and advertisements, or whether such use, as hereinafter described, is in unfair trade competition with the complainant's vendible goods.   The material facts are as follows: In 1893, Dr. Adam Reed and George J. Winter, who were joint owners of the Reed invention for a cushion sole for a shoe, granted licenses to several firms or corporations to manufacture the shoe embodying the said invention.   It was understood between the licensors and their licensees that the shoe should be called "Dr. A. Reed's Cushion Shoe."   In the years 1895, 1896, and 1900, letters patent for a cushion shoe were issued to Reed and Winter.   On January 26, 1897, a certificate of registration of a trade-mark was granted by the Patent Office to said Reed, consisting of the representation of a shoe resting on a cushion, and having printed over such emblem the words "Doctor A. Reed's" and thereunder the word "Trademark." The patents and trade-mark rights were assigned by the owners for value to the Metropolitan Bank and by the latter to the defendant Frew, who, in 1901, transferred the same to the complainant's predecessor.   The complainant thereupon granted licenses to manufacture the shoes to different companies, one located in Chicago and the other in Buffalo, and expended a large sum of money in advertising and popularizing the shoe under and by the name of Dr. Reed's Cushion. Shoe.   The business became valuable, and stores were opened by the complainant in different parts of the country under the name of Dr. A. Reed's Cushion Shoe Company, and in various ways the attention of the public was attracted to the distinctive trade-name and trade-mark of the complainant.   From the time of acquiring title to the patents and trade-mark and the right to use the name of Dr. A. Reed in connection with the sale of its cushion shoes to the spring of 1905, the. only cushion shoes in the market known by said name or designation were the high grade shoes manufactured by complainant's licensees, and which retailed at $5 per pair.   The title to the original patents and trade-mark and complainant's right to use the name of Dr. Reed in the manner stated is not seriously controverted by the defendants.   Indeed, it is alleged and shown that in an action in the Supreme Court of the state of Michigan, brought by complainant against Goldberg Bros. (unreported), a licensee of the E-Z Shoe Company for unfair dealing in trade, an action wherein such company was concededly the actual defendant, that the title of the patents and trade-mark, and the exclusive right to use the name "Dr. A. Reed's Cushion Soled Shoes" or. "Dr. Reed's Cushion Soled Shoes," was held to be lawfully in the. complainant.   The defendant E-Z Shoe Company also represents the individual and firm defendants in this action, all of whom had knowledge of the decision of the Supreme Court of Michigan, and, accordingly, the question of title is res adjudicata.   Dennison Mfg. Co. v. Scharf Tag, Label & Box Co., 121 Fed. 313, 57 C. C. A. 9.

The proofs show that the defendant's shoe is styled "The Improved Easy Cushion Sole Shoe," and upon the cards, labels, shoe straps, and

advertisements are printed the words "Dr. A. Reed, Patentee." Upon the labels and boxes is printed the following:

"Do not confuse this shoe with the shoes made under the former set of patents taken out by Dr. Reed, and which have been called the 'Dr. Reed Cushion Shoe.' Our shoes are decidedly an improvement over those made under these old patents"—   .

and on the inside of some of the defendant's shoes appear the following:

"This shoe is m'f'd under my new improved patents. Do not confuse with my old patents. Dr. A. Reed, Patentee."

No claim is made of similarity of labels or style of boxes or dress but complainant's position is that the fraudulent use by the defendants of Dr. Reed's name upon their shoes and advertising medium had the effect of simulating complainant's cushion shoes, and misleading the intending buyer. The defendants contend that they manufacture and vend an improved cushion shoe under a later patent issued to Dr. Reed, and under a registered trade-mark owned by the E-Z Shoe Company, of which Dr. Reed is the president and a stockholder, and that they have differentiated their shoes and advertisements, as above stated, to negative any deception or intention to palm off their goods for those of complainant. Evidence was given by the complainant to show, on the contrary, that the appropriation by the defendants of the trade-name confused the buyer, and misled him into buying the defendant's shoe, which sold for $3.50 per pair, when he in fact intended buying that of complainant's make. It was proven that not infrequently customers inquire at shoe stores for the Dr. Reed shoe or the Reed Cushion shoe without any other designation, intending to buy the genuine Reed shoe, and such name or designation either singly or in connection with the word "patentee," being visible upon defendant's labels, trade-mark, and shoe strap, sales were liable to be made, and in fact were made, of the spurious article.

In these circumstances, is the appropriation and use of the name "Dr. A. Reed" or its equivalent designations by the defendants an invasion of the complainant's prior acquired right? It is quite true that an individual may use his name in a business conducted by him, though some other person or firm engaged in similar business has a prior right to such use, and this rule obtains even if confusion results from such dual use, provided it is not done in unfair competition. But an individual using his surname to carry on his business where a similar name has been appropriated by another engaged in the same business must do so in absolute good faith. He must use his name honestly, and without intending to deceive or induce the public to buy his goods for those of another. Concededly there can be no valid trade-mark of a personal name. Howe Scale Co. v. Wyckoff, Seamans, etc., Co., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972. But, unquestionably, a prior right to a trade-name under which a business is conducted and good will established, even if it be the name of an individual, will be protected against another of the same name who uses it to pass off a fraudulent imitation as the goods of the one first acquiring a right to its use. R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 70 Fed. 1017,

17 C. C. A. 576. The case of Howe Scale Co., supra, upon which reliance is placed by the defendants, is thought distinguishable. There, the defendant Remington in good faith used his surname to promote the sale of a typewriter manufactured by the firm of which he was a member. He used it in connection with the name of Sholes, calling the machine the Remington-Sholes typewriter. He did nothing to create confusion or palm off his machine as that of the Remington manufacture, nor did an assignment by him of the right to use the trade-name "Remington" enter into the case. The Supreme Court held there could be no exclusive appropriation by any one of a surname as against others having the right to use it. Such, however, is not this case. Dr. Reed has never been personally engaged in the manufacture and sale of his patented shoes. True, his name is used as an officer in connection with the business of the defendant, the E.-Z Shoe Company, but I think in view of the evidence that the position of the defendants cannot be regarded in any other light than if Dr. Reed were totally unconnected with the defendant corporation. He cannot assign or transfer the use of a trade-name, which he had previously assigned to complainant, in connection with the manufacture and sale of cushion shoes, to enable the defendants to fraudulently divert the trade of the complainant. It is, however, insisted that they have marked their shoes to avoid the possibility of any one, buying with ordinary care, being deceived, but this claimed precaution does not remove the difficulty. That, ordinarily, an intending purchaser is attracted by the name "Dr. Reed," under which the shoes were sold by the defendants, rather than by its emblem which appeals to the eye, is shown by the record. Admittedly, Dr. Reed had the right to patent his later invention, and there were no restrictions upon his right to personally or in association with others to engage in the business of manufacturing and vending his improved sole or shoe, but having previously parted with his right to use his name in connection with the manufacture and sale of cushion shoes under his original patents, and which, as we have seen, was thereafter used in the business of another, and popularized by the expenditure of a large sum of money, he cannot invade the trade of the latter. Why use the words "Dr. Reed, Patentee"? Is it to take advantage of what the complainant has done in the way of popularizing its product? The answer that the name is used because Dr. Reed is the patentee of the so-called improved cushion sole is specious. To print such words on the cards, labels, and shoe straps of the defendants is manifestly unfair to the complainant, and fraudulently misleads the public. I have examined the authorities cited in defendants' brief, but am left unpersuaded to a different conclusion. The equitable principles relating to unfair dealing in trade are well settled, but a proper application requires that each case must be determined upon its own facts. As said in Dennison Mfg. Co. v. Scharf Tag, Label & Box Co., supra, "Slight difference in the facts of two such cases may result in very different decisions."

Nor is the Goldberg Bros. Case res adjudicata upon the point that the defendants, in accordance with the decree of the court, have sufficiently differentiated their product to negative the asserted fraudulent purpose. The character of the wrongful acts in that case were dif-

·ferent, and, except upon the question of complainant's prior right to use the trade-name the precise facts here presented were not before the court. So far as the decision holds that the defendants may avoid the acts complained of by the cautionary labels and statements, namely, "This is not the Dr. A. Reed's original Cushion Shoe," I am constrained to a different conclusion. It is true that apt notices to the public ·in circulars or explanatory words prominently displayed on labels, boxes, etc., may be a sufficient warning to the purchasing public, but the question here, despite such notice, is whether the use of the name in question is a reasonable and proper use, or whether its use by the defendants was induced by a purpose to deceive. The case of Pillsbury v. Pillsbury-Washburn Flour Mills Co., Ltd., 64 Fed. 841, 12 C. C. A. 432 is instructive upon this point. My conclusion is that the defendants, or each of them, are using the designation which is the subject of this controversy illegitimately and in unfair competition. The relief prayed for in the bill should be granted, with costs. Decree may be entered accordingly.

## On Settlement of Decree.

In an ordinary situation a defendant who has been found guilty of ·fraudulently using the trade-mark of a rival dealer or dressing his goods in simulation of another trader, and by so doing practices a deceit or fraud upon the public, may be required to account for the gains and profits made by such wrongful use, or for damages resulting ·therefrom to the owner of such trade-mark. This principle, however, rests entirely upon an intentional fraud by a defendant and the loss of business by the complainant through his wrongful acts, which intentional wrongdoing may be ascertained directly from the facts, or may be presumed from the evidence and circumstances. The question is, can such culpable inference be drawn from the facts of this case?

Under the decision of the Supreme Court of Michigan in an action brought by this complainant against Goldberg Bros., in which action the defendant the E-Z Shoe Company was the actual defendant, the asserted wrongful acts of the defendants were held not to be an invasion of complainant's rights. The decree in that case pointed out that the defendants might indicate that the shoes manufactured and sold by them were covered by Dr. A. Reed's or Dr. Adam Reed's patents upon the condition that, in connection with such statement, they·also place upon their shoes, boxes, cartons, or written matter the cautionary inscription "this is not the Dr. A. Reed's original Cushion Shoe." In accordance with such decree the shoes of the defendants were so inscribed and placed upon the market for sale. Under the circumstances presented I think the decision of the Circuit Court of Appeals, ·in N. K. Fairbank Co. v. Windsor, 124 Fed. 200, 61 C. C. A. 233, has ·direct application. It is sufficient to quote from that decision as follows:

"Whether that decision (interlocutory) was sound or not is immaterial. It ·would be straining the doctrine of inferred intent beyond all reasonable ·bounds to hold that one who bought, made, and sold, while that decision between the original manufacturer and the designer of the package remained in force, intended to enter into 'an unlawful competition' with complainant."

Furthermore, I think this case also comes under the doctrine of Ludington Novelty Co. v. Leonard, 127 Fed. 155, 62 C. C. A. 269, where an accounting was denied because, in the judgment of the Circuit Court of Appeals, there was grave doubt as to whether there could be substantial recovery. In this case it would be difficult to satisfactorily establish that the purchasers of the cushion sole shoes of the defendant the E-Z Shoe Company and dealers would not have bought them had they known such shoes were not manufactured under the original Reed patents. No accounting for damages will be allowed.

The decree should contain a provision protecting the rights of the defendant Alfred V. Frew to use the name "Dr. A. Reed Cushion Shoe" in connection with his retail business in Buffalo, Tonawanda, and Niagara Falls, as such rights under his contract with complainant's predecessor have been defined and adjudicated by the Supreme Court of the state of New York. The decree relating to the rights of said Frew should not be as broad as suggested by defendant's counsel, for I conceive that, while he may have the right to use the trade-name, his use is restricted by his contract to the sale of shoes made under the original Reed patents, and, accordingly, the palming off of a spurious Dr. Reed shoe for the genuine article is unfair dealing in trade.

The former opinion in this case directing the entry of a decree as prayed for in the bill is modified, as herein before indicated.