WOLF BROS. & CO. v. HAMILTON–BROWN SHOE CO.†

(Circuit Court of Appeals, Eighth Circuit. May 20, 1913.)

No. 3,758.

*Per Van Valkenburgh, District Judge.*

1. APPEAL AND ERROR (§ 1097*)—SUIT FOR UNFAIR COMPETITION—SECOND APPEAL—QUESTIONS CONCLUDED.

A determination by the Circuit Court of Appeals, based on the evidence in the record on an appeal, that the defendant was chargeable with unfair competition, should be reopened, if at all, on a subsequent appeal taken after an accounting, only upon convincing evidence that the original conclusion was wrong.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368, 4427; Dec. Dig. § 1097.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 93*)—UNFAIR COMPETITION—EVIDENCE OF INTENT.

In cases of unfair competition, the fraudulent intent is often inferred from the facts, sometimes against the sworn protestations of the defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. § 93.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 98*)—SUIT FOR UNFAIR COMPETITION—MEASURE OF DAMAGES.

In patent and strict trade-mark cases, the infringer is held to account for profits accruing because of the unauthorized use of the property right; and unfair competition in trade may, under proper conditions, entitle the injured party to the same measure of relief.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. § 98.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION.

A manufacturer of shoes, which stamped upon the soles a trade-name so nearly resembling that used by a competitor as to be calculated to confuse purchasers, did not avoid a charge of unfair trade by placing its name as maker conspicuously on the carton in which each pair of shoes was sold to the retail dealer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION.

If a manufacturer or wholesale dealer willfully puts up goods in such way that the ultimate purchaser will be deceived into buying them as the goods of another, it is no defense that he does not deceive and has no intention of deceiving the retailer, to whom he himself sells the goods; but the question is whether he has or has not knowingly put into the hands of the retail dealers the means of deceiving the ultimate purchaser.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 93*)—SUIT FOR UNFAIR COMPETITION—MEASURE OF DAMAGES.

In such cases the complainant in a suit for the unfair competition will not be held to specific proof that ultimate purchasers were deceived, and limited to loss of profits thus established; but it will be presumed that sales made by defendant were the result of the unlawful invasion of his rights, especially when it appears that the unlawful use of the name

was one of the causes, and it is impossible to apportion between that and other causes the credit for such sales.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. § 93.*]

**7. TRADE-MARKS AND TRADE-NAMES (§ 97*)—UNFAIR COMPETITION—CONSTRUCTION OF INJUNCTION.**

An injunction restraining a defendant from using the name "American Lady," as applied to its shoes for women, "when not accompanied with other matter clearly indicating that such shoes are of its own manufacture," was not violated where its own name, surrounding in belt form the name "American Lady," was stamped on the soles of the shoes, and the name "American Lady," with its own name in belt form surrounding the word "Makers," on the top facing of one shoe of each pair. (Smith, Circuit Judge, dissenting.)

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

*Per Hook, Circuit Judge.*

**8. TRADE-MARKS AND TRADE-NAMES (§ 98*)—SUIT FOR UNFAIR COMPETITION— MEASURE OF DAMAGES.**

In a successful suit for unfair competition, the relief to which complainant is entitled, in addition to an injunction, is limited to the recovery of compensatory damages for past injury to his business, which are not, as in patent and strict trade-mark cases, measured by the profits made by defendant, but should be based on proof, and in proper cases a consideration of general conditions, such as the relation of the parties to the trade and to each other, including their respective trade areas.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. § 98.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by Wolf Bros. & Co., a corporation, against the Hamilton-Brown Shoe Company. From the final decree (192 Fed. 930), complainant appeals. Reversed.

Simeon M. Johnson and Lawrence Maxwell, both of Cincinnati, Ohio (Percy Werner, of St. Louis, Mo., on the brief), for appellant.

H. S. Priest, Paul Bakewell, and Luke E. Hart, all of St. Louis, Mo., for appellee.

Before HOOK and SMITH, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge. Appellant Wolf Bros. & Co., complainant below, is a corporation engaged in the manufacture of women's shoes at Cincinnati, Ohio. Appellee is a corporation and a large manufacturer and jobber of shoes at St. Louis, Mo. Appellant and its predecessors manufactured and sold a woman's shoe which it called "The American Girl." This name was registered as a trade-mark. Some years later the appellee adopted and registered as a trade-mark the term "American Lady," and manufactured, advertised, and sold women's shoes under that name. January 29, 1906, appellant filed its bill charging the appellee with infringing its said

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trade-mark "The American Girl," and with unfair trade by the use of the name "American Lady," together with certain catch-phrases and numerals theretofore adopted and used by appellant, and praying an injunction and accounting. Proofs were taken, and upon the hearing the Circuit Court dismissed appellant's bill, and the case was brought to this court on appeal.

Upon consideration thereof this court held that the term "The American Girl" was not the subject of valid trade-mark, but that the record did disclose conduct on the part of appellee amounting to unfair competition in trade. Accordingly the decree was reversed, with directions to the Circuit Court to enter a decree "enjoining the defendant from using the name 'American Lady,' as applied to its shoes for women, when not accompanied with other matter clearly indicating that such shoes are of its own manufacture, and therefore not of complainant's, and from using in connection with such name, as applied to its shoes for women, the numerals mentioned or the catch-phrase 'With the character of the woman,' or any other phrase in simulation of the phrase 'A shoe as good as its name' "; also granting an accounting, which was limited to the time since the commencement of the suit. The opinion of this court is found in 165 Fed. 413, 91 C. C. A. 363. The facts upon which it was based are stated therein, and will not be unnecessarily repeated here.

Pursuant to the direction of this court, the Circuit Court on November 15, 1909, entered the following decree:

"The defendant, Hamilton-Brown Shoe Company, its servants, agents, officers, and employés, are perpetually enjoined from using the name 'The American Lady,' as applied to its shoes for women, when not accompanied with other matter clearly indicating that such shoes are of its own manufacture, and therefore not of the manufacture of the plaintiff, Wolf Bros. & Co., and from using in connection with such name, as applied to its shoes for women, the numerals 403, 404, 407, 408, or 397, or the catch-phrase 'With the character of the woman' or any other phrase in simulation of the phrase 'A shoe as good as its name.' The costs up to and including the entry of this decree are adjudged against the defendant, and execution therefor is awarded. This case is referred to H. H. Denison, Esq., as master, upon the evidence already taken in this case, and the exhibits in evidence in this case, and such further evidence as may be offered before the master by the parties to this action, to ascertain and report the damages, since the commencement of this suit, which the plaintiff has suffered, and the profits, since the commencement of this suit, for which the defendant may be liable, said accounting of damages and profits to be limited to shoes sold by the defendant since the filing of the bill in this case, and which were marked with the name 'The American Lady,' and not accompanied with any other matter clearly indicating that such shoes were of the manufacture of the Hamilton-Brown Shoe Company."

Extended proofs were taken before the master. In his report he finds that during the period to which the accounting was limited appellee sold American Lady shoes, which, because of differences in marking, are divided into three classes:

Class 1. 974,016 pairs of shoes which bore no impression or distinguishing mark, except the words "American Lady" stamped upon the sole with a metal die. The profits upon these were found to be $254,401.72.

Class 2. 961,607 pairs of shoes marked as follows: The words "Hamilton-Brown Shoe Company" in belt form, with the words "American Lady" in the center, stamped upon the sole of each shoe, and in the top facing no mark, except, perhaps, in some cases, the name of a retail dealer in the facing of one shoe. The profits upon these to appellee were found to be $190,909.83.

Class 3. 593,872 pairs of shoes marked as follows: Upon the sole the same stamping as in class 2, and in the top facing of one shoe the name "American Lady" and the words "Hamilton-Brown Shoe Company" in belt form surrounding the word "Makers." The profits upon these to appellee were found to be $132,740.77.

The master recommended that a judgment be entered in favor of appellant in the sum of the profits accruing from the first two classes, aggregating $445,311.55. For the profits accruing from the third class he held that appellant was not entitled to recover under the opinion of this court and the decree entered in accordance therewith. Both parties filed numerous exceptions. Upon hearing below the court overruled complainant's exceptions, sustained defendant's exceptions, adjudged a recovery of $1 nominal damages against defendant, and taxed the costs against complainant.

The contentions of appellant are: First, that a decree should have been rendered in its favor upon the first two classes of shoes sold, as recommended by the master; second, that that decree should have included the profits upon the third class of American Lady shoes sold, which was denied by the master; third, that the master erred in allowing too large credits to the expense of producing and selling the American Lady shoes, whereby appellee's net profits were improperly diminished.

Defendant, appellee, contends: First, that four elements must be made manifest in appellant's case before it can be entitled to recover, a failure of proof in any one of which constituent grounds must result in a failure in judgment: (a) A design to defraud; (b) the adoption of means reasonably calculated to make the design effective; (c) that the design and means were effective; (d) reasonably certain injury to complainant—material damage. Second, that a different rule in the assessment of damages prevails in cases of unfair competition from that obtaining in those involving strict trade-mark; that in the latter a property right is taken, and the infringer must respond for the profits upon all goods sold through an unauthorized use of the mark; that in the former it must be shown that actual damages have accrued from loss of profits diverted. Third, that in this case the name "American Lady," as applied to the shoes sold, was actually accompanied with other matter clearly indicating that such shoes were of defendant's own manufacture, and therefore not of complainant's. Fourth, that the master adopted an erroneous method of computing the items of expense for which appellee should have received credit in the manufacture and sale of American Lady shoes, whereby the net profits arrived at were unduly increased. These contentions will be considered in their order.

[1] 1. With respect to elements "a" and "b," this court, in directing an accounting on the former appeal, found that there was a design to defraud and that the means adopted were reasonably calculated to make that design effective. It found that appellant was first in the field with the words "The American Girl" adopted as a trade-name to designate its shoes; · that in connection with this name it used the catch-phrase, "A shoe as good as its name," and in its catalogue certain numerals to designate different styles of such shoes; that thereafter the appellee adopted the trade-name "American Lady" and the catch-phrases, "The shoe deserves its name," and "With the character of the woman," as also the identical numerals used by appellant; that later appellant adopted an additional numeral, 397, and directly thereafter appellee went back and adopted the same numeral. The court further found that the words "The American Girl" and "American Lady" are so similar as to cause confusion, and that such confusion had resulted; that all this was done by appellee with knowledge that it was following appellant, and that such acts were not consistent with innocence and good faith; further, that appellee acted with notice and knowledge of the infringement through correspondence; hence an injunction and accounting was granted as heretofore stated. This court at that time had before it evidence showing that the name "American Lady" was adopted by the appellee at an assembly of its traveling salesmen and resulted from suggestions made by them. These salesmen came from the same territory in which appellant's shoes were most largely sold. The original suggestion came from a salesman who traveled in Texas; another Texas salesman and one from Arkansas were also present. It was disclosed in the testimony that the largest sale of The American Girl shoes was among the negroes and illiterate whites in the South; also that in this very territory actual confusion, which worked greatly to the disadvantage of appellant, existed among purchasers. The adjudication made was upon the merits, and should be reopened, if at all, only upon convincing evidence that the original conclusion, which led to the injunction and to this accounting, was wrong. De Long Hook & Eye Co. v. Francis Hook & Eye & Fastener Co. (C. C.) 159 Fed. 292; In re Potts, 166 U. S. 263–267, 17 Sup. Ct. 520, 41 L. Ed. 994; Chicago Wooden Ware Co. et al. v. Miller Ladder Co. (C. C. A.) 133 Fed. 541, 66 C. C. A. 517; Fairbank Co. v. Windsor et al. (C. C. A.) 124 Fed. 200, 61 C. C. A. 233; Fourniquet et al. v. Perkins, 16 How. 82, 14 L. Ed. 854. Nothing was adduced at the second hearing to alter the situation originally presented, and we adhere now to the conclusion reached then.

[2] That conclusion also involves, to a certain degree, elements "c" and "d," namely, that the design and means were effective, and that reasonably certain injury and material damage resulted to appellant. It appears from the record that the appellant, through one of its salesmen, enjoyed an annual business of $75,000 from the sale of The American Girl shoes in the state of Illinois. This salesman was hired by the appellee, and appellant's business in that state was practically destroyed. When appellee entered the field with its rival trade-name, appellant's business immediately fell off. Actual confusion in the mind of the

consuming public was shown, and damage to appellant is legitimately to be presumed. The injury to its business was at least reasonably certain. And even though these deductions may not necessarily be drawn from the prior conclusion reached by this court, nevertheless the same results are now sufficiently apparent from an examination of this record. In cases of unfair competition, the fraudulent intent is often inferred from the facts, sometimes against the sworn protestations of the infringer. Fairbank Co. v. Windsor et al. (C. C. A.) 124 Fed. 200, 61 C. C. A. 233; Florence Mfg. Co. v. Dowd et al. (C. C. A.) 189 Fed. 44, 110 C. C. A. 608. And so this court held on the former appeal (165 Fed. loc. cit. 416, 91 C. C. A. 363).

[3] 2 and 3. In strict trade-mark cases the infringer is held to account for profits accruing because of the unauthorized use of the property right; and unfair competition in trade may, under proper conditions, entitle the injured party to the same measure of relief. Regis et al. v. Jaynes et al., 191 Mass. 245, 77 N. E. 774; Gulden v. Chance et al. (C. C. A.) 182 Fed. 303–320, 105 C. C. A. 16; Merriam Co. v. Saalfield (C. C. A.) 198 Fed. 369, 117 C. C. A. 245; Reed Cushion Shoe Co. v. Frew et al. (C. C.) 158 Fed. 552–556; Fairbank Co. v. Windsor et al. (C. C.) 118 Fed. 96; Atlanta Milling Co. v. Rowland et al. (C. C.) 27 Fed. 24; Lever v. Goodwin, L. R. 36 Ch. Div. 1. Following the analogy of the patent cases. Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975.

However, appellee submits that this accounting must fail for the following reasons: First, because it claims that the cartons in which its American Lady shoes were sold displayed accompanying matter clearly indicating that such shoes were of its own manufacture, and therefore not of appellant's; second, because it conclusively appears that it did not deceive the retailers, to whom alone it made sales; third, because it denies any responsibility for the ultimate consumers, who buy at retail, and asserts that there is no direct proof that any such were deceived into buying appellee's shoes for those manufactured by appellant.

[4] It was stipulated at the hearing that every pair of American Lady shoes issued by appellee to its retail dealers were sold and delivered in cartons, each of which cartons bore prominently on the lid thereof in white letters on a black background at the head of said lid the words "Hamilton-Brown Shoe Co.'s" and at the foot of said lid, equally prominent, the name "American Lady," making the lettering upon the lid read, "Hamilton-Brown Shoe Co.'s American Lady;" that on the front end of each carton appeared the name "American Lady" and the belt trade-mark of the Hamilton-Brown Shoe Company, which consisted of a black strap, in the center of which was a red background, the words "Hamilton-Brown Shoe Co." appearing in white letters on the black strap, and the word "Makers" appearing in white letters on the red background. Appellee claims that this was matter accompanying the use of the words "American Lady," as applied to

the shoes, sufficient to conform to the requirement made by this court; and this was the opinion of the trial court. With this we cannot agree.

In the first place, it is abundantly shown in the testimony that it is a common practice of shoe dealers, for their own purposes of advertisement, as well as for that of maintaining a uniform stock appearance in their stores, to remove shoes from the cartons in which they are purchased and place them in other cartons of uniform appearance and markings, irrespective of the source from which they came. In the next place, it is not only disclosed by the testimony, but it is a matter of common knowledge, that the purchaser of shoes rarely, if ever, sees the carton in which they are incased upon the shelves —much less that in which they come from the manufacturer. The purchaser takes his seat at a point removed from the stock, and makes known his wishes as to the character of shoe, and its size, with which he desires to be fitted; the salesman brings the shoe—often but one— taking it from the box, which he leaves upon the shelf, and the purchaser forms his opinion of the shoe from its appearance, and from the marks that appear upon the shoe itself. Therefore the carton, in which the shoe is originally contained, or afterwards placed, has practically no influence upon the ultimate purchase. Furthermore, if the name "American Lady" be placed upon the shoe itself, as the evidence shows it was, the spirit as well as the letter of the court's requirement would be that this name there placed should be accompanied by such matter as would clearly disclose the identity of the manufacturer.

This defense also involves the claim that the name "Hamilton-Brown Shoe Company," stamped upon the shoe, either upon the sole, with the name "American Lady," or in the top facing, with the same distinctive name, constituted a sufficient disclosure of the identity of the manufacturer. This by no means follows. The practice of retailers, as well as jobbers, of placing their names upon articles which they have for sale, but do not manufacture, is well known; and in the present case the testimony discloses that the appellee is a jobber as well as a manufacturer of shoes, and that its name is stamped upon all the shoes it puts forth, whether of its own manufacture or that of another. It is the characteristic trade-name which strikes the attention of the would-be purchaser, and, as was shown in evidence, the name "The American Girl" was constantly confused in the minds of such purchasers with that of "American Lady."

These same cartons were before the court on the last appeal. It must be presumed that the retail merchant, receiving the shoes in these cartons, knew what shoes he was buying, and from whom. He would have known this in the absence of any carton. The appellee conceives that it has discharged its duty and obligation to the appellant, and to the public, if it has used means which would excuse it from the charge of having deceived its own customers. It says:

"We are not concerned with what the retailer does; we are concerned with how the Hamilton-Brown Shoe Company sells the shoes."

[5] Such is not the law. If a manufacturer or wholesale dealer willfully puts up goods in such a way that the ultimate purchaser will be deceived into buying the goods of another, it is no defense that he

does not deceive and has no intention of deceiving the retailer, to whom he himself sells the goods. The question is whether the defendants have or have not knowingly put into the hands of the retail dealers the means of deceiving the ultimate purchaser. Scheuer v. Muller et al. (C. C. A.) 74 Fed. 225, 20 C. C. A. 161; Dennison Mfg. Co. v. Thomas Mfg. Co. (C. C.) 94 Fed. 651; National Biscuit Co. v. Baker et al. (C. C.) 95 Fed. 135; Fairbank Co. v. Bell Mfg. Co., 77 Fed. 869, 23 C. C. A. 554; Revere Rubber Co. v. Consolidated Hoof Pad Co. (C. C.) 139 Fed. 151; Lever v. Goodwin, L. R. Ch. Div. 1; Gulden v. Chance et al. (C. C. A.) 182 Fed. 303, 105 C. C. A. 16.

[6] In such cases the complainant will not be held to specific proof that ultimate purchasers were deceived, and limited to loss of profits thus established. Loss will be presumed. In Merriam Co. v. Saalfield, 198 Fed. 369, 117 C. C. A. 245, the rule is thus stated by the Court of Appeals for the Sixth Circuit:

> "Where the title was not qualified as the law and the decree required (if such cases appear), and it further appears, by direct proofs or by necessary inference, that it is impossible to determine whether this unlawful title use was the inducing cause of the sale—in other words, when it appears that such title was one of the causes, and it is impossible to apportion between that and other causes, the credit for the sale—then (and if we are to adopt the analogy of the patent cases) there must be a presumption that the sale results from the unlawful use of the name. The defendant has confused the marking and dress, which he had a right to use, with those which, as against complainant, he has no right to use. The latter part is a material, if not the major, part of the whole. If the history of the sale cannot be more definitely ascertained and followed, and so it is impossible to say which part of the dress exercised the predominant influence, then under the principle of Westinghouse. Co. v. Wagner Co., the defendant must respond."

We have here a case in which the appellee, with a design to appropriate appellant's trade, has devised a trade-name strikingly similar to that used by appellant. It did this deliberately, and adopted many expedients, all of which were calculated to help along the deception and enable it to accomplish its purpose. It fortifies itself by certain formulas in dealing with its direct purchasers, through which it expects to escape responsibility for the ultimate results of its acts. It invades the territory in which appellant is doing business, and which covers all the states of the Union except two, and particularly the Southern states, in which appellant's trade is largest. It makes use of its own prestige, its great resources and advertising facilities, with which to break down the trade of a smaller business competitor, and to confuse the public with which that competitor has already established a business reputation. Having accomplished its aim, which was to avail itself of the pioneer work of appellant, it is willing to submit to an injunction and to nominal damages, but insists, as a condition to substantial recovery, that appellant accomplish the well-nigh impossible task of establishing specifically the number of ultimate consumers who have been thus deceived in the purchase of shoes. Neither considerations of equity nor the decided cases sustain this contention. The property rights of complainant have been invaded in such manner that the rules long recognized in patent and strict trade-mark cases should be applied. Wrongs of this nature cannot be perpetrated,

and the courts be helpless to extend substantial relief. The recovery in this case is large; but that is because the transactions involved were large. The principle is in no wise affected by this consideration. If the judgment seems harsh, it is no more so than defendant's own acts have made it. The court cannot do otherwise than rule in accordance with those just principles which must govern and control its action. It should be steadfast in its purpose both to relieve against unlawful encroachment and to promote commercial honesty and fair dealing.

[7] 4. No special damages apart from profits are shown. The method of computation adopted by the master was essentially fair, and the profits found substantially accurate. The use of the word "Makers" in the third class of American Lady shoes, while not placed upon the sole in such position as to call especial attention to it, was nevertheless used upon the shoes themselves, and therefore this class was properly excluded by the master. It follows that the court below rightly overruled complainant's exceptions. It should likewise have overruled those of defendant.

The decree must be reversed, with directions that defendant's exceptions to the master's report be overruled, that the report of the master be confirmed, that a decree be entered against defendant for the amount recommended by him, and that the costs be taxed against defendant.

It is so ordered.


HOOK, Circuit Judge. [8] For the most part I agree with the above opinion, but am doubtful about the measure and amount of recovery. This is not a case of patent or trade-mark, but one of unfair competition, and, though it has been said to be analogous to infringement of a trade-mark, it seems to me there may be distinctions which are important in this litigation. The plaintiff offered no proof of damage, but is held entitled to defendant's profits aggregating $445,311.55. It does not appear plaintiff was deprived of such a large amount of profits, but simply that defendant made them. Nor does it appear that there was confusion or impossibility to segregate or distinguish between plaintiff's damage and defendant's gain, because, as stated, plaintiff offered no proof of the former. From choice, not necessity, it stood on its right to defendant's profits. In this situation I am not clearly persuaded that defendant's profits, as such, are recoverable. But, if they are, it then seems to me the recovery should have been more closely confined to the profits resulting from actual unfair competition, as distinguished from that which is constructive or theoretical. It does not seem right that there should be a recovery of the profits on all shoes insufficiently marked, without reference to the effect, extent, place, or circumstance of the competition.

The court has applied the rule which obtains in cases of patent and trade-mark. There is a reason for the rule in those cases, which is not applicable to unfair competition. Patents and trade-marks are in themselves a sort of special property, of which the owner is given a monopoly by statute. He has the exclusive right of use everywhere.

An infringer carries off the property, as it were, and makes gains and profits from a use which belongs to the owner. Those gains and profits are recoverable in equity (not at law, Burdell v. Denig, 92 U. S. 716, 23 L. Ed. 764) according to the rule applied to a trustee who has wrongfully used trust property to his own advantage (Root v. Railway, 105 U. S. 189, 26 L. Ed. 975). In unfair competition the plaintiff has no such property right in his trade-name, symbol, or dress of goods. Any one can use them by making it clear to the ordinary purchaser that the articles to which they are applied are his, not plaintiff's. A wrongful use of them is a tort injurious to plaintiff's business, but it is not an appropriation of a property right of which he has a monopoly. For a wrongful injury to business damages is the ordinary rule, and compensation the ordinary measure of recovery. The books are full of instances in which the recovery is so limited. When more than compensation is demanded, the reason must be found in statute or special circumstances; and when the latter are relied on they should be closely examined, especially when, as here, the doctrine is not fully settled in the law, but is argued upon analogy. It is not enough to say unfair competition is analogous to infringement of a trade-mark and profits are recoverable for the latter. Unfair competition is a subject of modern origin, and its development, which has been rapid, should proceed along lines of principle. Upon what theory is a plaintiff entitled to more than an injunction and compensatory damages for injury sustained—a loss in his business? Disapprobation excited by defendant's conduct will not suffice. As was said in Livingston v. Woodworth, 15 How. 546, 559, 14 L. Ed. 809:

"We are aware of no rule which converts a court of equity into an instrument for the punishment of simple torts." '

Nor will a supposed impossibility of proving the damage. Proof of damage to a business may be difficult, but it is not impossible. No higher degree of certainty is required than the nature of the case admits, and the scope and extent of the inquiry are well settled. Nor can it be that defendant's profits are an element of plaintiff's damage, upon the presumption that the sales of the former would otherwise have been made by the latter. There is no such presumption, even in a case of patent. Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024. Unfair competition may also be said to be analogous to a trespass upon the good will of a business. Indeed, a trade-name or symbol is an incident to the good will. Brown Chemical Co. v. Meyer, 139 U. S. 540, 548, 11 Sup. Ct. 625, 35 L. Ed. 247. A transfer of the business by sale or succession may embrace the good will; a vendor may also covenant not to engage in competition. The rights so acquired, like the right of the plaintiff here, may be protected in equity by injunction. Trego v. Hunt, 65 L. J. Ch. 1; Hedge v. Lowe, 47 Iowa, 137; Pomeroy, Eq. Juris. § 934. It is difficult to distinguish the principle of such cases from that of ordinary unfair competition, yet I would be surprised, had the courts awarded the injured party all the profits of the wrongful competitor up to the time of the injunction.

It is true there is some authority for the award of profits in unfair competition, but in most of the cases relied on it rests largely on unnecessary dicta or brief statements of an analogy to trade-marks and patents. Regis v. Jaynes & Co., 191 Mass. 245, 77 N. E. 774, is frequently cited on this proposition, but it seems to have been a case of technical statutory trade-mark (see 185 Mass. 458, 70 N. E. 480), and the mention of the rule in unfair competition a passing reference arguendo. In support of the reference the following cases were cited: Fairbank Co. v. Windsor, 118 Fed. 96, in which the Circuit Court relied mainly upon an analogy to the infringement of a trade-mark, saying:

"The remedy for the enforcement or protection of a trade-mark right or against unfair competition involves the same mode of procedure, and ends in the exercise of the restraining power of a court of equity, and the award of such damages as may have been sustained, or the profits of the wrongdoer it is presumed would have accrued to the person whose rights were invaded."

Walter Baker & Co. v. Slack, 130 Fed. 514, 65 C. C. A. 138, in which the rule was assumed, rather than decided, and the discussion was from a different angle. Williams v. Mitchell, 106 Fed. 168, 45 C. C. A. 265, in which the trial court denied complainants "a reference to determine the damages sustained them by reason of past unfair competition," and the Court of Appeals merely said:

"The complainants are entitled, upon proper proof, to compensation to the extent of the invasion."

And, finally, Lever v. Goodwin, 36 Ch. Div. 1. This last case is frequently cited to sustain the doctrine, and it does, though rather by way of assumption, since the matter for decision was defendant's contention that he sold only to dealers, not to final purchasers, and therefore there was no evidence he had injured plaintiffs at all. Ten years later Justice Kekewich followed it as by obligation in Saxlehner v. Apollinaris Co., 66 L. J. Ch. 533, 1 Ch. 893, but took occasion to say:

"I venture to doubt whether the propriety of directing such an account in a case like the present has ever been fully considered. It seems to have been assumed that the right to use and protect what is styled a common-law trade-mark, to distinguish it from a registered trade-mark, is a species of property carrying with it all the rights and remedies incidental to property, and that therefore the account of profits follows the injunction as a matter of course, as it does when a successful plaintiff asks it in a patent case. * * * If at liberty to express an opinion, I should wish to say that, if there be no property in such a trade-mark, the right to an account of profits does not necessarily follow the injunction, and the consequences of directing an account here are so serious that I should be unwilling to do it unless compelled by authority."

Atlantic Milling Co. v. Rowland (C. C.) 27 Fed. 24, was a case of trade-mark. Reed Cushion Shoe Co. v. Frew (C. C.) 158 Fed. 552, is also cited to sustain the rule; but the Circuit Court said that it rests entirely upon the "fraud by a defendant and the loss of business by acts," and no accounting was allowed, because under the peculiar circumstances "it would be difficult to satisfactorily establish that the purchasers" would not have bought from defendant with full knowledge of the facts. In Gulden v. Chance, 182 Fed. 303, 105 C. C. A.

16, there was no discussion, and but brief reference to the measure of recovery. The trial court had held with defendants on the question of unfair competition, and in reversing it on that ground the Court of Appeals merely added:

"The complainant is also entitled to recover all profits and damages lost and sustained by him by reason of all sales by the defendants," etc.

Profits lost by a plaintiff on all defendant's sales may be proper element in his compensation, but they do not necessarily equal all defendant's profits. In Florence Mfg. Co. v. Dowd, 189 Fed. 44, 110 C. C. A. 608, the question was that of difficulty in accounting, and defendant's liability for his gains and profits was assumed, not discussed. Perhaps the fullest discussion is found in Merriam Co. v. Saalfield, 198 Fed. 369, 117 C. C. A. 245. It was there held that plaintiff could recover defendant's profits on each sale, where it was made to appear the purchaser was misled, and also, by analogy to Westinghouse Co. v. Wagner Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, where it was impossible to determine the influencing cause; that is, to apportion the credit for the sale. There are other cases upon the subject, but for the most part less definite than the above. On the other hand, Judge Putnam, in Merriam Co. v. Ogilvie, 170 Fed. 167, 95 C. C. A. 423, said in speaking for the court:

"Under some circumstances, it has been held that the profits to be accounted for would be the entire profits of publication; but the Supreme Court has never had occasion to consider a rule so harsh as this, and, following the analogy of the practice established in suits for infringements of patents for inventions, we are led to the conclusion that it would never go to that extent."

Again, the court said, doubtless having in mind the difficulty which beset Justice Kekewich in Saxlehner v. Apollinaris Co., supra:

"The cases where there has been no division of profits, but the whole profits have been allowed, are probably trade-mark cases, in which, the defendant having used a trade-mark proper, the presumption was that the goods would not have been sold without that use. * * * The present case, however, does not fully take on that feature. The substantial offense of Ogilvie did not consist in availing himself of a Merriam Company's trademark, because both this court and the Circuit Court have expressly found that there was no trade-mark. It consisted in dressing up his publications unlawfully. Therefore there is no concrete thing which belongs to the Merriam Company, the value of which can be substantially determined in this connection."

But, even if gains and profits are recoverable, the amount awarded here seems to me far beyond what can be justified upon sound reason or principle. I think it should have been more closely confined to the extent of the interference with plaintiff's business, to the results of the actual unfair competition, as distinguished from that which is inferred or theoretical. No rule in equity is good which, based on abstract considerations, ignores relevant conditions and inflicts a grievous punishment beyond the real extent of the wrong or the deserts of the complaining party. If it be conceded that a defendant, who has used the trade-name, symbol, or dress of another, should be held to have in-

tended deception, and to bear the burden of disproving it in each case of sale, or, failing in it, as he must, to yield to plaintiff all the profits of the unfair competition, should the inquiry end with the amount of his sales and the gains therefrom? Should it not be broader, and embrace the conditions of the trade, the markets, the relations of the parties to them and to each other, etc., so that the real effect of defendant's conduct may appear, and plaintiff may not make an unmerited gain by recovering exaggerated damages in a court of equity? A., having applied a trade-name to an article which he has sold only in Maine, might possibly have an injunction against B., who, thinking it attractive, uses it on a like article in Nebraska, because the potential expansion of A.'s business might be affected; but we would hardly expect him to recover all B.'s gains and profits. That is an extreme instance; but in actual affairs cases cover the entire range from such extremes to close hand to hand competition. Nor, if A. had made a few sales in Nebraska, and B.'s had run into the millions, would it appear equitable that the former should have all the gains and profits of the latter? In a patent case, that rule of recovery would be clear; but to apply it to unfair competition seems like using a yardstick to weigh sugar.

Again, if both sell largely in the same territory, it might nevertheless clearly appear that defendant, with a much larger capital and many times the outlay for enlarging his business, acquired an enormous trade, much greater than plaintiff would ever have had under any circumstances. It must be borne in mind that plaintiff can be fully protected for the future by injunction which leaves him in the undisturbed enjoyment of his rights in the trade designations. What we are concerned with here is the past, whether plaintiff should be compensated or rewarded, and, if the latter, whether extravagantly or temperately, according to rules which can be generally applied to all cases of the kind. The award in this case does not proceed along the above lines.

The suit was begun January 29, 1906. Between December 11, 1908, and the close of the period of accounting, defendant sold 961,607 pairs of shoes on the soles of which were stamped the words "Hamilton-Brown Shoe Company" in belt form with the words "American Lady" in the center. Each pair was in a carton having prominent labels showing the contents were Hamilton-Brown Shoe Co.'s American Lady shoes and that that company was the maker. On neither cartons nor shoes was any phrase or arbitrary number in simulation of those of the plaintiff. As to these shoes the sole criticism is the absence of the word "Maker" on the shoes and the similarity of the name "American Lady" to the plaintiff's "American Girl." There was nothing else to mislead the ultimate purchaser. On these shoes defendant made a profit of $190,909.83, and it is included in the award to the plaintiff. I agree with the court in what it says about the ignorance of the ultimate purchaser of the labels on the cartons, and also that defendant should have more definitely indicated on the shoes themselves that it was the maker, and therefore inferentially that plaintiff was not. But I think the omission was sufficiently cured by injunction, and did not

call for the punishment imposed. The markings which were made showed an honest, but ineffectual, attempt to observe plaintiff's rights, and in such a case there should be no recovery of profits, if, indeed, any pecuniary recovery at all.

An injunction is not necessarily followed by an accounting. It frequently occurs that the former is granted, and the latter refused, and sometimes for the lack of fraudulent intent.

SMITH, Circuit Judge. I fully concur in most of the opinion by Judge VAN VALKENBURGH. I am of the opinion, however, that Wolf Bros. & Co. is entitled to a decree for $132,740.77 in excess of that awarded it on account of the shoes embraced in what is called class 3. The interlocutory decree entered in the Circuit Court upon the mandate of this court contains this provision:

"(2) The defendant, Hamilton-Brown Shoe Company, its servants, agents, officers, and employés, are perpetually enjoined from using the name 'The American Lady,' as applied to its shoes for women, when not accompanied with other matter clearly indicating that such shoes are of its own manufacture, and therefore not of the manufacture of the plaintiff, Wolf Bros. & Co. * * *"

There has been no suggestion that this decree was too broad, or exceeded the directions given by this court. The parties do not agree, however, as to the construction of it. Substantially, the respondent says the Hamilton-Brown Shoe Company was enjoined from using the name "The American Lady," as applied to its shoes for women, unless the shoes were accompanied with the other matter described. The complainant contends it was the words "The American Lady" which were required to be so accompanied.

Substantially the court has adopted the contention of the complainant, and I think that clearly, where the words "The American Lady" were stamped on the sole of a shoe, they were not accompanied with the explanatory words required, if they appeared on the inside of one of the shoes.

I think the complainant's exceptions to the finding of the referee should have been sustained, but fully concur that defendant's exceptions should have been overruled.