## WILLIAMS SOAP CO. et al. v. J. B. WILLIAMS SOAP CO.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1911. Rehearing Denied July 27, 1911.)

### No. 1,692.

1. TRADE-MARKS AND TRADE-NAMES (§ 73\*)—FAMILY NAME—USE—DECEPTION OF PUBLIC—INJUNCTION.

Complainant owned an old and well-known business, originated in 1845 under the name of the J. B. Williams Soap Company, for the manufacture and sale of "Williams soap." In 1895 certain persons by the name of Williams engaged in the manufacture and sale of soap. This firm was afterwards incorporated, and the name changed to the Williams Soap Company; the original Williamses selling their interests to others. Defendant, having sold its soap under labels imitating those used by complainant, on complainant's protest, agreed to cease such imitation, but refused to cease using the name "Williams" as a part of its corporate name. Held that, though a family name like Williams cannot be exclusively appropriated by any one, yet defendant was not entitled to use the same so as to defraud the public, and hence complainant was entitled to an injunction restraining defendant's use of the word "Williams" in any of its soap brands, labels, packages, and advertisements, either in a corporate name, or in the name of any business concern, or as an individual name or in any manner, without distinguishing it from complainant's name and complainant's product.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.\*

Use of corporate and firm name as trade-mark or trade-name, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malzhaffee Fab. v. Pastor Kneipp Med. Co., 27 C. C. A. 357.]

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRADE-MARKS AND TRADE-NAMES (§ 91*)—INJUNCTION—DEFENDANTS.

Where the individual defendants, in the use of a family name, which was a part of the name of a corporation to which they had succeeded, and which use was an infringement on complainant's right to use the same name in its business, did not act as mere agents of the corporation, the corporation instead being a mere instrument in their hands, they were proper parties to a suit to restrain such use.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 101; Dec. Dig. § 91.*]

Appeal from the Circuit Court of the United States for the District of Indiana.

Suit by the J. B. Williams Soap Company against the Williams Soap Company and others. Decree for complainant, and defendants appeal. Affirmed.

Charles T. Hanna and Thomas A. Daily, for appellants.

V. H. Lockwood, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. Appellants were enjoined from using in any of their soap brands, labels, packages, and advertisements the word "Williams"—

"either in a corporate name, or in the name of any business concern, or as an individual name, or in any manner, without distinguishing such word from the complainant's name and the complainant's products and advertising matter by adding to the word 'Williams' some other word or words, which shall not be merely a Christian name, or by joining with the printed corporate or business name such printed words as will say in effect that the soap designated or referred to by such other printed words is not the soap manufactured by the J. B. Williams Company of Glastonbury, Connecticut."

Appellee is owner of an old and well-known business at Glastonbury. The shaving-soap part of the business dates back to 1845. The evidence is that toilet soaps were added at least as early as 1885. On soaps, wrappers, cartons, boxes, and in all advertisements the word "Williams" has always been conspicuously displayed. For 50 years the products have been popularly known as "Williams Shaving Soap" or "Williams Soap," and the company as "Williams Soap" Company. The name is of great value, and appellee has always endeavored to protect it.

In 1895 one Whitney and one William Williams, as Whitney & Williams, began a soap business at Indianapolis, Ind. George, a brother of William, soon bought out Whitney, and the business was continued as Williams Bros. In 1899 this firm was succeeded by the William Williams Soap Manufacturing Company, a corporation. In 1902–03 the appellants S. F. and J. M. Daily bought all of William Williams' stock and all of George's except nine shares. George remained as superintendent till October, 1903, when he ceased to have any part in the management, and in October, 1904, sold his last share. In May, 1904, the corporate name was changed to the Williams Soap Company. From the time of Williams Bros. to the present the pub-

lic and customers have referred to the factory or company as the "Williams Soap Factory" or "Williams Soap Company."

About June, 1904, appellants put forth a brand of shaving soap in a carton which in size, color, and general appearance was quite similar to a carton of complainant's. The resemblance was not intended. After remonstrance of appellee, appellants changed the size and color, and quit sending out the first design.

In 1903, after the Dailys were in control, they put forth a brand, "Genuine Antiseptic Shaving Soap, Manufactured by Williams Soap Co." This was a fraudulent imitation of appellee's oldest label. The Dailys were familiar with appellee's label. They approached it in size and color, and their use of "Williams Soap Co." without name or location of the actual makers was particularly deceptive. On June 23, 1904, appellants shipped their last order of this brand, and thereafter discontinued the sale.

Prior to August, 1904, appellants had used the word "Williams" as part of the name of brands of toilet soap, for instance, the brand "Williams Antiseptic Tar Soap." On appellee's complaint in August, 1904, appellants discontinued such use.

Soap of appellants was sold by retailers, who stated to the purchasers that the soap was the much-advertised Williams Shaving Soap, the kind that barbers use.

By conferences and correspondence extending from August, 1904, to April, 1905, appellee endeavored to secure protection of its rights without suit. The end was that, while appellants admitted they had no right to use "Williams" as the name, or as a part of the name, of a brand of soap, they insisted that no wrong had been done in taking or using the name, "Williams Soap Company," and therefore intended to use the name in the future as they had in the past.

Appellants, before suit was brought, ceased to imitate labels and abandoned the word "Williams" as the name, or as any part of the name, of a brand of soap. The quitting was under circumstances which indicated that those offenses would not be repeated. Unless, therefore, the use and the threat to continue the use of the name "Williams Soap Company" were wrongful, an injunction would not be justifiable. Kennicott Co. v. Bain, 185 Fed. 520, 107 C. C. A. 626.

[1] A family name, like Williams, cannot be exclusively appropriated by any one. Others, of the same name, may use it in all legitimate ways. Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616. Therefore, appellants say, the Indianapolis Williamses had the right to go into the soap business and to use their name in connection therewith. That is so, provided their use of the name did not carry a false impression. When the Indianapolis Williamses had their last say, they put their name in the corporate title, William Williams Soap Manufacturing Company. Whether that act of theirs was an infringement of complainant's rights is not very material now. The Dailys obtained control of that corporation in 1903. Although no person by the name of Williams had any voice in the management

after April, 1903, the Dailys were entitled to maintain the name and good will of the corporation into which they bought. Chickering v. Chickering & Sons, 120 Fed. 69, 56 C. C. A. 475. But they had no personal right to the name Williams. Their change of the corporate title to the Williams Soap Company is explained, on this record, not by any desire of men engaged in business to use their family name therein, nor by any necessity of changing the name in order to preserve the good will of the establishment, but by an intent to avail themselves of the reputation attaching to "Williams Soap." The intent involved in the imitation of the yellow label and in the use of the word "Williams" in the names of toilet soaps is too obvious for comment. Repentance and reform may have limited the remedy that was needed by way of injunction, but the offensive acts remain as applicable evidence of the intent involved in the Dailys' change of the corporate name. They knew that in popular phrase their company was referred to as the Williams Soap Company. They knew that such was not the name of their company, but that "Williams Soap" was the name of appellee's product. If, therefore, they should put "Williams Soap Company" on their product, retailers could sell it on the reputation of "Williams Soap." And so they used "Williams Soap Company" on the fraudulent yellow label before they accomplished by the necessary legal procedure the change of corporate name. But with the fraudulent imitations of cartons and labels out of the way, the use of "Williams Soap" as the name of the appellant company has all the effect of a falsehood. The public would be likely to believe that "Baker's Chocolate" Company, "Hall's Safe" Company, "Williams Soap" Company, "Bates Numbering Machine" Company, were respectively the makers of those well-known products, if no explanations were made. Bates Mfg. Co. v. Bates Numbering Mach. Co. (C. C.) 172 Fed. 892.

[2] The Dailys were properly made defendants. They were not acting as mere agents of a corporation. The corporation was rather an instrument in their hands.

No error was committed in ordering an accounting. Repentance does not satisfy the damages.

The decree is affirmed.