CHICKERING et al. v. CHICKERING & SONS et al.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1914.)

No. 2012.

1. TRADE-MARKS AND TRADE-NAMES (§ 73*)—INFRINGEMENT—USE OF FAMILY NAME.

What ever confusion to the public and injury to complainants results from a lawful use by defendants of their own name in open, fair, and legitimate competition must be suffered; defendants only being responsible for the abuse of their right and for any unlawful use of the name and acts of unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—TECHNICAL TRADE-MARK—SURNAME.

A surname is not the subject-matter of a valid technical trade-mark, since it cannot be a clear distinguishing mark on goods, but by appropriation and actual exclusive use it may, in the course of time, come to denote the product of a particular person, factory, or business, and acquire a secondary signification which, when established, may be the subject-matter of an exclusive right.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*

Right to use one's own name as trade-mark or trade-name, see note to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357; Borden Ice Cream Co. v. Borden's Condensed Milk Co., 121 C. C. A. 205.]

3. TRADE-MARKS AND TRADE-NAMES (§ 73*)—FAMILY NAME—CHICKERING.

The word "Chickering," while a family name having been associated with pianos manufactured and sold by Jonas Chickering and his successors since 1823, thereby acquired a secondary signification which might be the subject-matter of a valid trade-mark so as to entitle his successors in the business to protect the same against its use by others of the same name in such a manner as to indicate that there were two kinds of "Chickering" pianos of which theirs was one.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 97*)—PROPER NAME—INFRINGEMENT—INJUNCTION.

Ordinarily, when a proper name has acquired a secondary signification which is entitled to protection as a trade-name, the relative rights of the parties may be adjusted by compelling those who may use the name in its primary sense to accompany such use by a clear and positive statement negativing any connection between them and those having the exclusive right in such secondary signification of the name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 97*)—PROPER NAME—INFRINGEMENT—INJUNCTION.

Where complainants were entitled to the exclusive use of the word "Chickering" as applied to pianos in the secondary signification of such name as a trade-name and defendants were entitled to use the name in the same business because it was their own proper name, and it was impossible for defendants, as a commercial proposition, to add to the name

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on the fall board of pianos a statement negativing any connection between defendants and those entitled to use the name as a trade-name, the court properly required defendants to adopt a new name for all their pianos, and add to the name so adopted a statement that the pianos were "made by" defendants.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 97*)—USE OF FAMILY NAME—INJUNCTION—SCOPE.

Where complainants had acquired the sole right to the use of the word "Chickering" in its secondary signification as a trade-name in the piano business, and were the successors in business of the original Chickering, while defendants, whose names were Chickering, were but grandsons of a brother of the original Chickering who started the piano business, neither of defendants' ancestors, nor any of the common ancestors of both parties, having had anything to do with the business, defendants were properly enjoined against advertising that they were the only Chickerings manufacturing pianos, or that the defendants' were the only pianos made by a Chickering.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

7. TRADE-MARKS AND TRADE-NAMES (§ 85*)—PROTECTION—RIGHT TO EQUITABLE RELIEF.

Complainants' predecessors, who were solely entitled to the use of the name "Chickering" as a trade-name for pianos, though located in Massachusetts, incorporated in 1886 under the laws of New York because under the New York laws they could retain the firm name "Chickering & Sons" without words indicating incorporation. After the death of the last descendant of the original Chickering, a special charter was obtained in 1901 from the Massachusetts Legislature, not obtainable under the general corporation act, creating the Massachusetts corporation under the name "Chickering & Sons," but, notwithstanding such incorporation, complainants continued to use the expression "Messrs." Chickering & Sons, both before and after the sale of the business to the American Piano Company in 1908. Held, that none of such acts were so material to the public as to deprive complainants of their right to relief in equity against defendants' alleged infringement of the name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

8. TRADE-MARKS AND TRADE-NAMES (§ 85*)—INFRINGEMENT—RIGHT TO RELIEF.

Where the name "Chickering" as applied to pianos had acquired a signification apart from the origin of the goods indicating quality, and complainant American Piano Company succeeded to the exclusive right to the use of such name as a trade-name, its continuing to use the name "Chickering & Sons" on the fall board and name plate of pianos manufactured and sold by it after it had acquired the business of the Chickering corporation was not such a fraud on the public as would deprive it of the right to protect the name against infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Christian C. Kohlsaat, Judge.

Suit by Chickering & Sons and another against Clifford C. Chickering and others. From a decree awarding a perpetual injunction and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an accounting of the profits in a suit for unlawful competition, defendants appeal. Modified and affirmed.

See, also, 198 Fed. 958.

Wm. D. McKenzie, of Chicago, Ill., for appellants.

Charles S. Holt, of Chicago, Ill., for appellees.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

MACK, Circuit Judge. This court, on January 6, 1903, affirmed the action of the Circuit Court in granting, on July 22, 1902, a temporary injunction to protect the complainant Chickering & Sons, a Massachusetts corporation, against the wrongful use of the name "Chickering," in and about the manufacture and sale of pianos by defendants Clifford C. and Fred W. Chickering, doing business in Chicago under the firm name of Chickering Brothers. The facts in the case, the relative rights of the parties, and the terms of the injunction are fully stated in the opinion then rendered by Judge Jenkins. Chickering v. Chickering & Sons, 120 Fed. 69, 56 C. C. A. 475. The legal principles there enunciated are confirmed by later decisions both of this and of the Supreme Court.

Thereafter, from time to time, depositions of witnesses were taken. In May, 1911, by supplemental bill, the American Piano Company, a corporation organized to acquire the business of several piano companies, and which, in July, 1908, had succeeded to the entire business of Chickering & Sons, except only the claim and cause of action involved in this suit, was made a co-complainant, and Wallace W. Chickering, who had joined his brothers as a member of the firm of Chickering Brothers in 1907, a codefendant. The supplemental bill set out numerous acts charged to be in violation both of complainants' rights and of the injunctional order of 1902. Thereupon, on January 2, 1912, the court extended the original preliminary injunction so as to bind Wallace W. Chickering and to protect the co-complainant, and in certain respects made it more specific. The case is now again before this court on appeal from the decree, entered after full hearing on April 15, 1913, in the District Court by Judge Kohlsaat, granting a perpetual injunction and referring the cause to a master in chancery for an account of profits.

This decree found that the name "Chickering," as applied to pianos, had long before the beginning of these proceedings come to designate the pianos manufactured by the complainants and their predecessors; that they had thereby acquired the exclusive right to manufacture and sell pianos by the designation of "Chickering pianos"; that the complainant Chickering & Sons is the owner of all rights in that behalf prior to July 12, 1908, and the complainant American Piano Company is such owner, by assignment and succession, since said date; that the defendants had wrongfully marked the pianos manufactured by them "Chickering Bros," in lettering similar to that used by the complainants, until the entry of the preliminary injunction; that since that date and pursuant to the injunction, the style of lettering had been changed, the use of a Maltese cross, found to be an imitation

of one awarded to and used by complainants, had been discontinued in their advertising and stationery and the words "Made by Chickering Brothers, Chicago," had been substituted for "Chickering Brothers" on the fall board of the piano, until the order of January 2, 1912, had found these changes not to be a sufficient compliance with the original injunction, and had required other changes. The court further found that the defendants had advertised their pianos, and knowingly allowed them to be advertised by dealers under the name of "Chickering Brothers Pianos" without marks or words to distinguish them from complainants'; that they had issued advertising matter containing references to their relationship to the Jonas Chickering family and to the former employment of Clifford and Fred in the Boston factory; that these statements were calculated to produce confusion of defendants' pianos with complainants'; that immediately after the death of the last male descendant of Jonas Chickering, defendants had marked their pianos, "The only piano made by a Chickering," and after the preliminary injunction of 1902 had forbidden this statement, they had substituted the statement, "The only Chickerings manufacturing pianos"; that defendants' acts have resulted in some actual purchases of defendants' pianos by persons misled into supposing them to be the genuine Chickering pianos, and in extensive confusion and uncertainty in the minds of the public as to the identity and relations between the Chickering piano and defendants' piano.

Thereupon the court perpetually enjoined defendants substantially as follows:

First. From using the word "Chickering" as the name or part of the name of a piano.

Second. From placing said word "Chickering" alone or in combination as aforesaid, on any piano not manufactured by the complainants; provided, however, that this order shall not prevent defendants from marking pianos of their manufacture with some other and different name which shall be the same for all pianos made by defendants, and adding thereto the words, "Made by Chickering Brothers, Chicago," which words "Chickering Brothers, Chicago," shall be of the same size and style; and such letters, relatively to the letters composing the name of the piano as aforesaid, shall not be larger or more conspicuous than the letters composing the words "Chickering Brothers, Chicago," as shown on the fac simile next below attached.

Third, fourth, and fifth. From using or authorizing the use of the word "Chickering," verbally or in writing, to the piano trade or piano purchasing public in reference to a piano other than complainants', without immediately accompanying it with a statement or distinct indication that the piano so referred to is not the original Chickering piano.

Sixth. From representing that there are two kinds of Chickering pianos, of which defendants' is one.

Seventh. (a) From representing that the defendants are members of or related to the Chickering family by whom the business of complainants was founded and carried on, or "the only Chickerings manufacturing pianos," or that the defendants' pianos are "the only pianos made by a Chickering," or any words of similar tenor or effect.

(b) From representing, without stating or otherwise distinctly indicating that defendants' pianos are not the original Chickering pianos: (1) That they were trained wholly or in part in the Chickering factory of complainants; or (2) that they have inherited or acquired, or have in any manner become possessed of, any portion or degree of the genius, skill, or ability of the founder of complainants' business and his descendants.

Eighth. From all acts calculated to create in the mind of any person of ordinary intelligence the belief or impression that the pianos manufactured by the defendants are Chickering pianos, or to create in the mind of such person confusion, doubt, or uncertainty as to whether defendants' pianos are or are not Chickering pianos.

Ninth. From in any wise attempting to make use of the good will and reputation of the Chickering piano, in putting out, selling, or offering for sale any piano not made by the complainants.

The basis of the appeal is: First, that defendants have not been guilty of unfair trade; second, that complainants did not come into court with clean hands.

[1] First. We deem it unnecessary to review the mass of evidence bearing on defendants' wrongful acts; in our judgment, it fully sustains the findings of fact. While it is urged on behalf of defendants that the specific instances of confusion resulting either from defendants' personal wrongdoing or that of dealers are few in number, extending over a long period of years, it is not controverted that both before and after this suit was begun, defendants' acts were such as to injure complainants in the enjoyment of their rights, and that unless restrained they would continue. Defendants' main reliance, in the matter of infringement, is on the contention that such confusion is only the natural result of the exercise by them of their undoubted legal right to the use of their own name. Whatever confusion to the public and injury to the complainants result from a lawful use by defendants of their own name in open, fair, and legitimate competition must be suffered; defendants, however, are responsible for the abuse of their right, for the unlawful use even of their own name, for any acts of unfair competition.

[2] A surname is not the subject-matter of a technical trade-mark. This is due to the fact that it cannot be a clearly distinguishing mark

on goods, inasmuch as any one bearing the name has a right to use it in connection with property of his manufacture. It may, however, by appropriation and actual exclusive use, in course of time come to denote, in the minds of the public, the product of some particular person or factory or business, and thus acquire a secondary signification. Such a secondary signification, when established, is the subject-matter of exclusive right; as Judge Baker said in Hanover Star Milling Co. v. Allen & Wheeler Co., 208 Fed. 513, 125 C. C. A. 515:

"If a dealer marks his shaving soap by the family name of 'Williams,' or his ale by the name of the village of 'Stone,' or his starch by the name of the hamlet of 'Glenfield,' his application of the name does not create its only meaning; but, if his trade creates a new meaning for the name, then he is entitled to just as full protection in the use of that meaning as if that were the only one. Others may use the common word in its common meaning, but they cannot use it in the particular meaning created by the complainant."

[3] In this case the proof is undisputed that in the course of the years before this suit was begun, Chickering pianos had come to mean the product of the business founded in 1823 by Jonas Chickering. Therefore, even though the defendants cannot properly be restrained from asserting, both in advertisement and on their product, that their piano is made by them, Chickering Brothers, they should be enjoined from asserting either that it is the "Chickering piano," or that there are two kinds of Chickering pianos of which theirs is one, because, to paraphrase the language of this court in Walter Baker & Co., Ltd., v. Slack, 130 Fed. 514, 65 C. C. A. 138 (a case cited with approval in Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616):

"In the market there were no two Chickering pianos, there was but one, and that was the product of Chickering & Sons."

In re Crosfield & Sons Application, 1910, 1 Ch. 130, Fletcher Moulton, L. J., said:

"It often occurs in trade that by continued use words get recognized as denoting the goods of a particular firm. These words may of themselves be unsuitable to be chosen as trade-marks, but they have, in fact, become so. Apart from the Trade-Mark Acts there would be nothing to prevent such words (as Yorkshire Relish or Worcester Sauce) becoming trade-marks in the eye of the law, and it was an obvious defect in the earlier legislation that it failed to give the benefits of registration to such marks when they had become duly established."

In Registrar of Trade-Marks v. W. & G. Du Cros, Ltd., 83 L. J. Ch. 1 (House of Lords 1913) Lord Parker said:

"Independent of any trade-mark legislation, whenever a person uses upon or in connection with his goods some mark which has become generally known to the trade or the public as his mark, and thus operates to distinguish his goods from the goods of other persons, he is entitled in equity to an injunction against the user of the same or any colorable imitation of the same which is in any manner calculated to deceive the trade or the public. Equity has never imposed any limitation on the kind of word entitled to this protection, but in every case it has to be proved that the mark has by user become in fact distinctive of the plaintiff's goods."

Under the present English trade-mark legislation, even a surname under exceptional circumstances, and subject to certain rights of oth-

ers having the same name, may be registered as a technical trade-mark. In re Teofani & Co.'s Trade-Mark, 82 L. J. Ch. 145; affirmed 82 L. J. Ch. 490 (1913).

The refusal of the English courts to enjoin E. G. Stanley Brins-mead from using his full name on the fall board of pianos at the suit to the old established house of John Brinsmead & Sons, Ltd., 29 Times Law Rep. 237, affirmed 29 Times Law Rep. 706 (1913), was due to the express finding that defendant had not been guilty of wrongdoing; that the form in which he placed his name on the fall board was conspicuously different from plaintiffs. While dealers had committed frauds in passing off defendant's for plaintiff's pianos, they had done this by telling deliberate falsehoods; defendant had not sug-gested or invited these wrongs by any act, and therefore was not responsible for them. The court said, however:

"If 'Brinsmead' had been in large characters, and 'E. G. S.' in characters which might be overlooked, that would have been a dishonest use of his own name. Another dishonest use would be if he had so printed it as to imitate the writing and manner in which the plaintiffs had put their name on their pianos."

In other words, because that defendant, unlike the Chickering Broth-ers, had done nothing at all to produce confusion or deception, except to use his own name in a very distinctive way, there was no occasion for the intervention of a court of equity to enjoin him from passing off his goods as those of another, and therefore, no need of determining just how such wrongful acts would be prevented with due regard to the rights of both parties.

In Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972, the court found that the defendant had not itself done anything to produce confusion, except to use the name "Remington" on its machines and in its literature. The decree enjoin-ing the use of "Remington," even as part of the name Remington-Sholes, "denies," as the court says, "the right to use the personal name rather than aims to correct an abuse of that right. * * * The use of two distinct surnames (Remington-Sholes) clearly differentiated the machines of defendant from those of complainant. * * * And, in our view, defendant's name and trade-mark were not intended or likely to deceive, and there was nothing of substance shown in defend-ant's conduct in their use constituting unfair competition, or calling for the imposition of restrictions lest actionable injury might result, as may confessedly be done in a proper case."

The legal principles anounced in each of these cases, when applied to the totally different facts in the present case, far from sustaining defendants' contentions, as urged in their behalf, distinctly support the decree of the District Court. See, too, Royal Baking Powder Co. v. Royal, 122 Fed. 337, 58 C. C. A. 499; Williams Soap Co. v. J. B. Williams Soap Co, 193 Fed. 384, 113 C. C. A. 310; Donnell v. Safe Co., 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481; Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Merriam v Saalfield, 198 Fed. 369, 117 C. C. A. 245; Bag-lin v. Cusenier Co., 221 U. S. 580, 31 Sup. Ct. 669, 55 L. Ed. 863;

Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616.

As to defendants' responsibility for the wrongful acts of dealers, the rule is well stated in Wolf Bros. & Co. v. Hamilton Brown Shoe Co., 206 Fed. 611, 617, 124 C. C. A. 409, 415:

"The appellee conceives that it has discharged its duty and obligation to the appellant, and to the public, if it has used means which would excuse it from the charge of having deceived its own customers. It says: 'We are not concerned with what the retailer does; we are concerned with how the Hamilton-Brown Shoe Company sells the shoes.'

"Such is not the law. If a manufacturer or wholesale dealer willfully puts up goods in such a way that the ultimate purchaser will be deceived into buying the goods of another, it is no defense that he does not deceive and has no intention of deceiving the retailer, to whom he himself sells the goods. The question is whether the defendants have or have not knowingly put into the hands of the retail dealers the means of deceiving the ultimate purchaser."

See Moxie Co. v. Daoust, 206 Fed. 434, 124 C. C. A. 316.

The problem, therefore, is how best to conserve complainants' exclusive right to the "Chickering piano," defendants' right to state that their pianos are made by Chickering Brothers, and the public's right to protection from confusion and deception.

[4, 5] Ordinarily when a proper name has come to acquire a secondary signification, the relative rights of the parties are adjusted by compelling those lawfully entitled to use the name in its primary sense to accompany such use by some clear and positive statement negativing any connection between them and those having the exclusive right in the secondary signification of the name. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. And so, in this case, the rights of the complainants could have been fully protected and deception of the public prevented by compelling the defendants to place, not hiddenly on the back or inside of the piano as they had done, but conspicuously on the fall board, in addition to the words "Chickering Brothers," some statement indicating that the piano was not the original Chickering. This plan would not, however, protect defendants because, as they urge, it would be utterly impossible for them, as a commercial proposition, to sell their product if any such statement were conspicuously displayed on the fall board, inasmuch as a piano is designed as well for ornament as for use. Here, as in the Prest-O-Lite Case, 215 Fed. 692, 131 C. C. A. 626 (see opinion of this court handed down to-day), some other and more practical method had therefore to be devised. Compelling the defendants to adopt one name for all of their pianos, to make the lettering of the words "Chickering Brothers" on the fall board relatively small as compared to this name, and to indicate that Chickering Brothers means the makers and not the piano itself, by using the phrase "Made by," accomplishes the result.

The requirement, to which defendants strenuously object that all of their product shall bear one name, was essential for the reason that, as the piano business has developed, some one name, ordinarily a surname, is used by every manufacturer to distinguish his product, the piano becomes known to the public by that name. If defendants were

permitted to use the word "Chickering" or "Chickering Brothers" on the fall board, unaccompanied by any other name and without the usually required express disclaimer of connection with complainants, their piano would inevitably be known as the "Chickering," and the confusion with complainants' piano would be, as it has been, unavoidable. The evidence in this case clearly shows that adding "Made By" and substituting "Brothers" for "& Sons" and "Chicago" for "Boston" are insufficient to prevent this. If, however, defendants were permitted to use more than one name, the several names would inevitably come to indicate to the public, not the name of Chickering Brothers piano, but the names of the several kinds or styles or grades of the Chickering piano. These several styles would certainly be called "Chickering's A, B, or C" piano. The District Court, in our judgment, has adopted, not only a perfectly reasonable, but perhaps the only available method of protecting both parties in the full enjoyment of their respective rights and at the same time preventing confusion and deception of the public.

[6] So, too, the absolute prohibition against the statement that defendants "are the only Chickerings manufacturing pianos," or that the defendants' "are the only pianos made by a Chickering," or that the defendants are members of or related to the Chickering family, by whom the business of complainants was founded, was, in our judgment, essential to the protection of the complainants' right. The defendants were very distant relatives of Jonas Chickering, grandsons of his brother; neither any of the defendants' ancestors nor any of the common ancestors of both parties had had anything to do with the piano business. All of the statements were but half truths; their only purpose was to give rise to the false inference that defendants, and not complainants, were, in fact, making the original Chickering piano, in succession to Jonas and his sons. "To convey that notion would be a fraud." Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., supra.

[7] Second. Have complainants by their acts or omissions forfeited the right to protection in a court of equity? The alleged grounds of forfeiture are: First, incorporating in 1886 under the laws of New York, instead of Massachusetts, because the former alone permitted the retention of the firm name "Chickering & Sons" without words indicating incorporation, second, securing in 1901, after the death of the last descendant of Jonas Chickering, a special charter from the Massachusetts Legislature, not obtainable under the general incorporation act, creating the Massachusetts corporation "Chickering & Sons"; third, using the expression "Messrs. Chickering & Sons" in catalogues issued after 1901, both before and after the sale in 1908 to the American Piano Company; fourth, representing Chickering & Sons as the makers after the sale in 1908; fifth, concealment by the American Piano Company of its connection with the pianos sold.

Clearly, the members of the firm of Chickering & Sons were guilty of no wrong to the public generally or to any individual in following the common practice of incorporating under the firm name where this is legally permissible, or in exercising their rights as citizens of Massachusetts in obtaining a special charter, thereby preserving to a do-

mestic instead of to a foreign corporation the old established name. Whether a firm or corporation named Chickering & Sons made these pianos is really immaterial to the general public. In any event, there was no misrepresentation.

While "Messrs." would probably indicate a copartnership, yet it is not an uncommon and, technically, not an incorrect term as applied to a corporation, for, while a corporation is a legal entity, it is, for some purposes, only the aggregation of the stockholders. Moreover, as Mr. Justice Holmes said in Jacobs **v.** Beecham, 221 U. S. 263, 31 Sup. Ct. 555, 55 L. Ed. 729:

"These matters are small survivals from a time when they were literally true, and are far too insignificant when taken with the total character of the plaintiff's advertising to leave him a defenseless prey to the world."

So far, therefore, as the complainant Chickering & Sons is concerned, it has forfeited none of its rights to the injunction or accounting, either under the original or under the supplemental bill.

[8] The American Piano Company, it is claimed, is in a different position. Although a full announcement of its purchase of and succession to the Chickering, Knabe, and other piano concerns was made in advertisements in the daily and financial press and through circulars at the time of the transactions, it is urged that these were merely financial advertisements, intended for prospective stock buyers and piano dealers, not for the general, piano-purchasing public. To the answer that in newspaper advertisements of piano sales and in circulars sent to music schools the true situation was fully disclosed, defendants reply that in some magazine advertisements and catalogues "Chickering & Sons" were named as the makers or the sole makers, and that, in addition to the trade-name "Chickering" on the fall board, complainants retained the name "Chickering & Sons" on the name plate attached inside of the piano without in any way indicating the change of ownership.

The primary function of a trade-mark or trade-name is to indicate the origin of the goods to which it is attached; the manufacturer or dealer, not the grade or quality. A good article bearing such a mark gets a reputation for quality; in the minds of the public, certain goods come not only to be recognized as A.'s goods, but also to be distinguished from other makes by their excellence; then the trade mark or name becomes "both a sign of the quality of the article and an assurance to the public that it is the genuine product of his manufacture."

In course of time, however, a trade mark and name, because of the nature of the article to which it is attached, may acquire an additional or different significance; instead of pointing to the original manufacturer or his firm or corporation, the technical legal owner of the trade right, or to the factory in which the goods have always been made, it may come to indicate the business itself by whomsoever owned and managed and wheresoever located.

It the personality of the original maker remains the predominant characteristic of the trade mark or name, any suppression of a change in the business, any statement falsely indicating that he is still the manufacturer of the goods, would necessarily be a fraud on the public, and

would therefore in such a case cause a court of equity to refuse its aid to the guilty party.   Manhattan Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, 27 L. Ed. 706.

If, however, "the association of the name with the article indicates the place, or process or quality of manufacture" (Bauer v. Benedictine, 129 Fed. 74, 56 C. C. A. 480), if the trade-name has come to identify that combination of original skill and continuity in the process and quality of manufacture which create the good will of and give a stamp of individuality to the business itself, a court of equity will not fail to protect an assignee who affixes the trade mark or name to the product of the business, "although he gives no notice of the assignment or change of manufacturers." Layton Co. v. Church & Dwight Co., 182 Fed. 24, 104 C. C. A. 464.

In the early history of the Chickering business the name undoubtedly pointed to Jonas Chickering as the owner and maker of the pianos. In course of time, however, a Chickering piano has come to mean a product of the business founded by him. The proof is clear that, while the construction of the instrument, even of its most important element, the scale, has from time to time been improved, its general relative and absolute quality of excellence has been maintained. Despite successive changes in ownership and form, the Chickering business has retained its identity; the sons of Jonas became his associates and then his successors; others became associated with them, and together they created the New York and the Massachusetts corporations and held the stock therein; these associates were the founders of and are stockholders, as well as the principal officers and directors, of the American Piano Company; the Chickering factory is where it has been for over 50 years; the old manufacturing force, with employés in continuous service for periods in some instances exceeding 30 years, has held fast to its old traditions and processes despite changes in personnel and in methods; in a word, the Chickering & Sons division of the American Piano Company is the very business that was founded over 90 years ago by Jonas Chickering, and the "Chickering" is its piano.

The failure to state the fact of succession in each and every advertisement and letter until after the answer to the supplemental bill was filed, when, by resolution of the directors of the American Piano Company, this practice was prescribed, and the continuance of the name "Chickering & Sons" on the inside name plate in the piano, were, in our judgment, not designed or used by complainants to deceive the public and did not, in fact, tend toward any deception. We conclude, therefore, that defendants have no cause for complaining of the decree.

There is an apparent inconsistency, however, between the parts which we have marked (a) and (b 2) in the seventh paragraph of the decree. As defendants, for the reasons heretofore stated, are properly prohibited from referring to their kinship with the Jonas Chickering family, they should also be enjoined, not conditionally but absolutely, from making any statement that they or either of them have inherited or acquired or in any manner become possessed of any por-

tion or degree of the genius, skill, or ability of the founder of complainants' business or his descendants. Genius, skill, and ability are not transmissible to collateral relations.

Inasmuch, however, as the training received in complainants' factory may have stimulated or developed any native genius, skill, or ability which defendants possessed, it is not improper for them to refer to this, subject to the limitations imposed by the seventh, eighth, and ninth paragraphs of the decree.

To make the decree consistent, paragraph 7 should be recast so as to read as follows:

"Seventh. From making, using, publishing, circulating or authorizing any statement, oral, written or printed, in substance or purport that the defendants or either of them are members of or related to or have inherited or acquired from or in any manner become possessed of any portion or degree of the genius, skill, or ability of the founder of complainants' business or of his descendants, or that the defendants are 'the only Chickerings manufacturing pianos,' or that the defendants' pianos are 'the only pianos made by a Chickering,' or any words of similar tenor or effect. It is further ordered that the defendants or either of them shall not make, use, publish, circulate, or authorize any statement that they or either of them were trained wholly or in part in the Chickering factory of complainants, without stating or otherwise distinctly indicating that defendants' pianos are not the original Chickering pianos."

Free and fair competition with complainants, as with all other piano manufacturers, is open to defendants; theirs is the duty, however, to exercise care not to approach so near the boundaries of their rights as to fall into the open ditch of illegitimate trade. Reliance upon the intrinsic merits of an instrument that shall stand in the piano world as distinctively as a Steinway or a Weber, and an insistent struggle to profit, not from the confusing use of the name "Chickering," but from the reputation and name of their own product, must hereafter be the defendants' aim, if they would save themselves from impending dangers.

The decree as recast will be affirmed.