## Case No. 4,443.

EMERSON et al. v. SIMM et al.

[6 Fish. Pat. Cas. 231;[1] 3 O. G. 293.]

Circuit Court, D. New Jersey. Feb., 1873.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

F. H. Betts, for complainants.
S. J. Glassey, for defendants.

NIXON, District Judge. The bill of complaint in this case prays, "that the defendants may be compelled to account for, and pay over unto the plaintiffs, all such gains and profits as have accrued or arisen to, or been earned and received by, the defendants, and all such gains and profits as they would have received but for the wrongful acts of the defendants, and such other relief as the equity of the case may require." The bill was taken as confessed, for want of an answer, and a final decree entered May 9, 1872, with a reference to a master to take, and state an account of the profits accrued to or received by the defendants on account of their infringement, and also to assess the damages suffered by the plaintiffs from such infringement.

The master's report was filed November 22, 1872, finding (1) that no satisfactory proof was made before him that the defendants had derived, or received, any profit from the use of the plaintiffs' invention; and (2) that the plaintiffs had suffered damage by the infringement of their patent right by defend-

ants to amount of $1,200, arising from their loss of the license fee, as established by the complainants, for the use of their invention and machine, by persons engaged in business of the character carried on by the defendants.

Six exceptions are filed to the report in behalf of the defendants, all of which, I think, are embraced in these two: (1) Because the master reports that the complainants are entitled to any damages in this suit. (2) Because he reports that they should be awarded the sum of $1,200 as a license fee for damages for the infringement; or that the evidence in the case warranted the finding of any such sum as the value of a license for complainants' invention.

1. The first exception was not very seriously urged at the argument. The bill in this case was filed June 14, 1871. Section 55 of the act of July 8, 1870 [16 Stat. 206], supplementing the provisions of the patent act of 1836 [5 Stat. 117], provides that, "upon a decree being rendered in any case for an infringement, the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby, and the court shall assess the same, or cause the same to be assessed under its direction, and shall have the same powers to increase the same, in its discretion, that are given by said act to increase the damages found by verdicts in actions upon the case." It will be perceived that the above section materially changes and adds to the remedy given to plaintiffs under the act of July 4, 1836. Section 14 of that act confined the jury to the actual damages which had been sustained by the plaintiff; and this amount the court was authorized to increase to any sum not exceeding three times the amount of the verdict. The objection of the defendants in this case is, that the bill of complaint does not pray for damages eo nomine, and hence, that no damages should be allowed. The answer is, that the bill asks for an account of gains and profits, and such other relief as may be agreeable to equity, and that under this general prayer for relief, upon a decree being rendered in favor of the complainants for an infringement of their patent, they are entitled, under the statute, "to receive, in addition to the profits to be accounted for by the defendants, the damages they had sustained thereby." The damages follow, by the law, as one of the results of the decree, whether specifically prayed for or not. It has been so held in England under Lord Cairns' act (22 & 22 Vict. c. 27), which simply gives jurisdiction to the court of chancery to award damages, if it sees fit so to do. Betts v. Neilson, 16 Wkly. Rep. 524; Id., 19 Wkly. Rep. 1125; Catton v. Wyld, 32 Beav. 266.

2. I have examined the testimony taken by the master, returned and filed with his report, upon which he bases his award of $1,200 for damages to the complainants. It appears that the defendants purchased the machine in the open market, without a knowledge of the patent; that they used it about nine months, commencing in September, 1870, and ending in June, 1871; that it was used solely in their own business in sawing boards for the manufacture of trunks, and that they abandoned all the patented appliances to the machine, when notified of their infringement, and before the suit was commenced. No case is, therefore, made for exemplary damages, and the sole question is, whether the amount fixed by the complainants for a license fee, to be paid by persons engaged in business of the character carried on by the defendants, is a fair criterion by which to judge of and measure the damages suffered by complainants from the defendants' infringement. The courts have always found it difficult to lay down any precise rule of damages in patent cases. The legislation of congress in the matter is quite suggestive. By section 5 of the act of 1793 [1 Stat. 318] if any person made or used an invention without the consent of the patentee, he forfeited and became liable to pay to the patentee a sum that should be at least equal to three times the price for which the patentee had usually sold, or licensed, to other persons, the use of the said invention. This was found in actual practice to be a measure of damages both inconvenient and harsh; inconvenient, because it did not make provision for those cases where the patentee manufactured and sold his invention, and depended upon the profits thus realized for his remuneration; and harsh, because it did not allow any discrimination to be made between the innocent violator and the willful pirate. Section 14 of the act of July 4, 1836, before referred to, restricted the jury to actual damages, but allowed the court, in its discretion, to treble the amount, according to the circumstances of the particular case. This section has been re-enacted in the law of July 8, 1870, and, in addition thereto, authority has been conferred upon the court, sitting in equity, to ascertain and assess, not only the profits of the infringer, but the damages of the inventor, with power of a corresponding increase in its discretion. But, although no rule can be laid down applicable to all cases, there is one which ordinarily applies to cases of this sort, where the patentee depends upon license fees or royalties for his compensation for the use of his invention. If he has an established license fee, the amount of such fee is his loss or damage for the use of the invention without a license.

The supreme court, in Seymour v. McCormick, 16 How. [57 U. S.] 490, says: "Where an inventor finds it profitable to exercise his monopoly, by selling licenses to make or use his improvement, he has himself fixed the average of his actual damages, when his invention has been used without his license."

The same rule was applied in Sickles v. Borden [Case No. 12,832]; in Goodyear v. Bishop [Id. 5,559]; and in Spaulding v. Page [Id. 13,219]. The defendants seek to avoid the application of this rule in the present case by showing that they ceased to use the complainants' invention, when apprised of the patent, and substituted other appliances, which rendered the machine quite as effective and useful for their purposes. I do not now listen to the suggestion of complainants' counsel that these substituted appliances are mere mechanical equivalents, for this is not the proper time and mode of trying that question; but surely the defendants are not permitted to get rid of the consequence of a confessed infringement by alleging that they might have used some other machine as advantageously as the complainants'. However available such proof might be, in considering the question of the defendants' profits, it has no weight in measuring the complainants' damages. I am therefore of the opinion that the exceptions must be overruled and the master's report confirmed, and it is ordered accordingly. Such a decree in this case will give to the defendants the right to use the invention of the complainants during the life of the patent.