GAGE-DOWNS CO. v. FEATHERBONE CORSET CO.

(Circuit Court, W. D. Michigan, S. D.    October 27, 1897.)

TRADE-MARK—GEOGRAPHICAL NAME—UNFAIR COMPETITION.
    One making corset waists at Chicago, and selling them as "Chicago Waists," so that this designation has come to denote among purchasers the goods made by him, is entitled to an injunction against another who makes similar waists in a different state and city, and sells them as "Chicago Waists," with the manifest intent of availing himself of the reputation acquired by the other's goods.

This was a suit in equity by the Gage-Downs Company against the Featherbone Corset Company to enjoin the use of certain marks and labels upon its goods.    The cause was heard on a motion for preliminary injunction.

Aldrich, Reed, Foster & Allen and Crane, Norris & Stevens, for complainant.

Howard, Roos & Howard, for defendant.

SEVERENS, District Judge.    In this case a motion was made some time ago for an injunction to restrain the defendant from using certain marks and labels upon its goods, which it is alleged in the bill are calculated to deceive the public, and lead them to suppose that they are buying the goods of the complainant; and the complainant claims that the defendant is thus appropriating the benefits of the reputation acquired by the complainant's goods.    Upon the facts as they now appear, the complainant has long been in the business of making and selling corset waists at Chicago, and marking them "Chicago Waists," and, being the only person marking its

manufactures thus, the complainant has come to be known as the origin by manufacture of the goods thus branded. The complainant has also employed upon its package as a label the initials of the company, "G. D." In the course of its business it employed Buyer & Reich as its agents on the Pacific coast, and the latter sold these goods thus marked; that is to say, marked "Chicago Waists." After the termination of their agency for the complainant, they continued to sell "Chicago Waists," and they would seem to have made some arrangement with the defendant by which the defendant makes corsets, and does them up in boxes marked in large letters "Chicago Waists," with the initials "B. & R.," and the defendant sells such goods of its manufacture to Buyer & Reich, and also to the trade in Michigan, and generally throughout the country.

Upon the arguments and in the briefs a great number of cases bearing upon the subject of the right of a party to appropriate the name of a place as a trade-mark or a trade-name, and wherein the circumstances in which it would be permitted and in which it would not, are extensively discussed. I have examined all the cases which were cited which were accessible, but I have not had the time to make any extended analysis of them upon paper. The circumstances vary greatly, but the underlying principle which is effective in the solution of such cases is that a party may not adopt a mark or symbol which has been employed by another manufacturer, and by long use and employment on the part of that other has come to be recognized by the public as denoting the origin of the manufacture, and thus impose upon the public by inducing them to believe that the goods which this new party thus offers are the goods of the original party. In other words, it is a fundamental principle that a man cannot make use of a reputation which another manufacturer has acquired in a trade mark or name, and, by inducing the public to act upon a misapprehension as to the source of the origin, deprive the other party of the good will and reputation which he has acquired, and to which he is entitled. Now, there are many cases in which it has been held that the name of the place where goods are manufactured is not the subject of appropriation, and this may be said to be the general rule, and to be applicable where that is the sole feature of the trade-mark or trade-name, and where the name of the place is used in its primary signification. But the use of the name of a place may, under circumstances, be such as to denote to the eye and mind of the public the name of the person who has, perhaps, by long-continued business in that place, or long appropriation of that name, and being the only person there who has thus appropriated and used that name, produced goods which have gained their favor. In such circumstances the name of the place may acquire a secondary signification, and become, instead of denoting the place where the goods are manufactured, a mark denoting the manufacturer, and in such case, and in the circumstance where the name has thus acquired a secondary signification, a party may use it, and may be entitled, possibly, to its exclusive use. In such a case it depends entirely upon the proof, and, if it appears that the name is used for the purpose of denoting the place where the goods are made,—if this is the primary object,—

then it is not subject to be appropriated by any one person resident there. All other residents have the like privilege of use. But, if the circumstances of the case show clearly that the use of that name is a means of appropriating the business advantages, good will, and trade-name of the complainant, that is not lawful. This feature of the case would be much affected by the circumstance of the residence of the parties. If they both resided in the same place, there would be a stronger reason for the general rule just stated. But where the name is appropriated by a manufacturer who resides at a different place, it very naturally starts an inquiry as to what is the motive—what is the object—which the party sought to attain. Now, in the present instance, the persons who are charged and who confess to using this label "Chicago Waists" on their goods are people who reside and do business in California (Buyer & Reich), and by others manufacturing at Kalamazoo (the Featherbone Corset Company). It is manifest that a very serious question arises upon this fact as to what purpose and object these California and Kalamazoo parties have in appropriating this name. It seems to me that there can be but one object, and that that object is to make use of the reputation which the goods thus branded have acquired. I gather that these goods have been manufactured and sold in this way by the complainant at Chicago solely, and that the inference should be that this mode of doing business by the defendant is adopted to mislead, and for the purpose of deriving such advantage in the manufacture and sale of the goods as arises from the good will and reputation of the complainant. Circumstances may develop upon the proofs which may change the impressions which the court has now formed. But I think the case is made out, and the usual preliminary injunction should issue, and the motion is allowed.