ONEIDA COMMUNITY, Limited, v. ONEIDA GAME TRAP CO., Inc.

(Supreme Court, Trial and Special Term, Madison County. December 31, 1914.)

1. TRADE-MARKS AND TRADE-NAMES (§§ 53, 73*)—INFRINGEMENT AND UNFAIR COMPETITION.

Though the Oneida Community, Limited, which had adopted its corporate name as a trade-mark, and whose factory was located near Oneida, had been manufacturing game traps for many years and manufactured a large percentage of the traps used in the United States and throughout the world, defendant had a legal right to adopt the name "Oneida Game Trap Company," to locate its business at Oneida, to manufacture and sell a trap resembling one of plaintiff's traps in size, shape, and general appearance, to ship them from any shipping point that suited its convenience, to send and receive its mail matter concerning such traps through the Oneida post office, and to advertise its trap in any publication it chose, with a cut thereof and its name and address, where its trap would not deceive the jobber, retailer, or experienced trapper, and it did not locate at Oneida with any sinister or fraudulent motive, though it may have located there because that was the great trap center of the world.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 61, 84; Dec. Dig. §§ 53, 73.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 55*)—INFRINGEMENT—INTENT.

To constitute an infringement of trade-mark rights by adopting a colorable imitation thereof liable to deceive and confuse the unwary buyer, it is not necessary that the infringer should act fraudulently or with evil intent.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 63; Dec. Dig. § 55.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 9*)—NAMES SUBJECT TO APPROPRIATION—GEOGRAPHICAL NAMES.

While the word "Oneida" in its geographical sense is not subject to appropriation for a trade-mark, it may acquire, by constant use in connection with other words and phrases, a secondary meaning and significance for the article or commodity to which it is affixed, within the provision of the trade-mark law (Act Feb. 20, 1905, c. 592, § 5, 33 Stat. 725, as amended by Act Feb. 18, 1911, c. 113, 36 Stat. 918 [U. S. Comp. St. 1913, § 9490]) that nothing therein shall prevent the registration of any mark used by the applicant or his predecessors which was in actual and exclusive use by them as a trade-mark for ten years next preceding February 20, 1905.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 13; Dec. Dig. § 9.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 65*)—INFRINGEMENT—TEST—"CALCULATE."

Whether a trade-mark is infringed by the use of a colorable imitation thereof or one similar thereto depends upon whether the resemblance is such that it is calculated to deceive and does in fact deceive the ordinary buyer under ordinary conditions, but "calculate" in this connection does not involve a planning, organizing, thinking out, or devising of an inscription, word, or name with intent to deceive, but refers rather to inherent properties of the name which are such as in and of themselves may confuse or deceive (citing Words and Phrases, "Calculate").

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. TRADE-MARKS AND TRADE-NAMES (§ 58*)—INFRINGEMENT—COLORABLE IMITATION OF TRADE-MARK.

The Oneida Community, Limited, which had adopted its name as its trade-mark, manufactured game traps with the name of the trap stamped upon the pan, the initial thereof in the center of the pan, and "Oneida Community, N. Y.," stamped along the edge of the pan, which was circular in form. Defendant adopted the name "Oneida Game Trap Company" and manufactured traps resembling one of plaintiff's traps in size, shape, and general appearance, with a circular pan and with the words "Oneida Game Trap Company, Inc.," on the edge of the pan, the name of the trap under the corporate name and its address, "Oneida, N. Y.," on the opposite edge of the pan. *Held*, that defendant was infringing plaintiff's trade-mark by using a colorable imitation thereof, and would be enjoined from stamping its corporate name on the pan of the trap, but would be permitted to stamp its name on any other part of the trap and to stamp on the pan the name of the trap, with words indicating that it was manufactured at Oneida.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 66, 67; Dec. Dig. § 58.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 98*)—DAMAGES—RIGHT TO RECOVER.

In an action for unfair competition and the infringement of a trademark, where, though a colorable imitation of plaintiff's trade-mark was being used, no intentional fraud appeared, damages could not be awarded.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. § 98.*]

7. TRADE-MARKS AND TRADE-NAMES (§§ 65, 75*) — DAMAGES — RIGHT TO RECOVER.

That plaintiff's agents, by exhibiting one of plaintiff's game traps to dealers and asking for one like it, were sometimes furnished one of defendant's traps, which was what they wanted to occur, did not justify an award of damages in a suit for unfair competition and trade-mark infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 64, 86; Dec. Dig. §§ 65, 75.*]

Action by the Oneida Community, Limited, against the Oneida Game Trap Company, Incorporated. Judgment for plaintiff for a part of the relief prayed for.

Harry D. Nims, of New York City, and Charles R. Coville, of Oneida, for plaintiff.

Thomas A. Devereux, of Oneida, for defendant.

KILEY, J. The parties to this action are domestic corporations, engaged in the manufacture and sale of game traps.

The plaintiff commenced its settlement, which was the forerunner of its present development, in 1848. The people primarily constituting the settlement called themselves the "Oneida Association"; later it was changed to "Oneida Community"; and in 1880 the present name "Oneida Community, Limited," was adopted and has since remained its corporate name. Under the United States statutes governing the registration of trade-marks, and what is commonly known as the "ten-year clause" of that law, reading as follows:

"And provided further, that nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from

whom title to the mark is derived, in commerce with foreign nations or among the several states or with Indian tribes which was in actual and exclusive use as a trade-mark of the applicant, or his predecessors from whom he derived title, for ten years next preceding February 20, 1905"

—plaintiff on March 5, 1907, had its corporate name registered as a trade-mark. The plaintiff has manufactured its traps largely at Sherill, Oneida county, N. Y., and Niagara Falls, Canada. Plaintiff's office address is Kenwood, Madison county, N. Y. The manufacturing plant of the plaintiff is only a short distance from the city of Oneida, N. Y., and has occupied its present location for 50 years or over.

The plaintiff is now, and for some years has been, manufacturing and selling the following brands of traps: "Victor," "Newhouse," "Hawley & Norton," "Oneida Jump," and others less prominently known. All of these, and most of the others manufactured, have the brands and printed matter stamped upon the pans.

The defendant was organized as "Oneida Game Trap Company, Incorporated," in March, 1913, and located at Oneida, Madison county, N. Y. So far its manufacture and sale has been confined to one trap, "Triumph." This trap in size, shape, and general appearance resembles plaintiff's trap "Victor No. 1," and it appears from the evidence that this trap of defendant will compete with the plaintiff's trap "Victor" in this regard, viz., by reason of the similarity of these features in the two traps. Plaintiff's trap "Victor" has stamped upon the pan "Victor" letter "V" cut in the center of the pan, and "Oneida Community, N. Y.," stamped along the edge of the pan. The pan is circular in form. The defendant's trap "Triumph No. 1" also has circular pan, and stamped on the pan, "Oneida Game Trap Company Inc.," along the edge of the pan "Triumph No. 1," with two holes punched in the pan, under the corporate name above given, and opposite to said corporate name and along the opposite edge of the pan is stamped its address, "Oneida, N. Y."

The plaintiff alleges substantially two causes of action in its complaint: Unfair competition; and that defendant has adopted a colorable imitation of its trade-mark under the federal statute known as the "ten-year clause" of the trade-mark statute—in effect, has infringed upon its trade-mark. The relief sought by plaintiff is an injunction providing that the defendant shall not use the word "Oneida" upon its trap in any manner whatsoever, calculated to mislead or deceive the public, or cause the public to assume that the defendant is the plaintiff. This is the general form of injunction when plaintiff succeeds in this class of cases. It leaves the defendant to guess what he, she, or it can do and not be again subject to litigation or punishment for contempt. The form proposed does not find favor with me. I will not follow it, but will try and decide what the parties can do as well as what they cannot do. The parties here have rights which should be fixed, beyond cavil, in the final judgment of some court, trial or appellate. The plaintiff was in the field a long time before the defendant; but that fact does not entitle the plaintiff to complain of the defendant, in the exercise of several rights which, as a live-going concern, it possesses.

[1] The defendant has a legal right to use the corporate name it has adopted. No judgment of any court can compel it to change that name. It had a right to locate its factory and business at Oneida, N. Y., and a court cannot adjudge otherwise. It infringes upon no patent rights of the plaintiff, and thus calls for no judicial interference. It has the right to manufacture and sell its "Triumph" trap, as it is now doing, without let or hindrance, inscription upon pan, not here considered part of that operation. It has the right to put them up in the packages now used for shipment, as it is now doing, to address such packages as the evidence shows it now does address them, and to ship them from any shipping point that suits its convenience. It may send its mail matter, descriptive of its trap, through the mails from Oneida, N. Y., and may receive incoming mail intended for it without fear of violating any rule of law, statute, or the principle laid down by any adjudicated case. That it may advertise its trap in any publication it chooses, with the descriptive matter, "Game Trap," "Triumph," manufactured by the "Oneida Game Trap Co." at Oneida, N. Y., with a cut of its traps, will scarcely be denied by the plaintiff. It will not be contended that the defendant's trap, as now made up and inscribed, will deceive the jobber, the retailer, or the experienced trapper.

The foregoing elimination of questions not contested suggests the consideration of just what the plaintiff contends is an infraction of the right and proper rule of conduct on the part of the defendant. The plaintiff has its trade-mark properly registered, viz., "Oneida Community, Limited," and urges that the defendant has violated section 16 of the trade-mark registration statute, which reads as follows:

That "the registration of a trade-mark under the provisions of this act shall be prima facie evidence of ownership. Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several states, or with foreign nations, or with the Indian tribes, shall be liable to an action," etc. (U. S. Comp. St. 1913, § 9501)

—in adopting and putting upon the pans of its traps its corporate name "Oneida Game Trap Co., Inc."; that this is a colorable imitation of plaintiff's trade-mark "Oneida Community, Limited"; that by reason thereof the defendant is enabled to carry on an unfair competition with plaintiff in the sale of an article of the same kind and description; that amateurs and boy trappers, having seen and heard of plaintiff's traps, and having become familiar with the word "Oneida" as used by it, can be easily confused and deceived by dishonest and unscrupulous traders and retailers, and furnished with defendant's trap, when in truth and in fact they (the purchasers above referred to) wanted plaintiff's trap. Defendant contends that no such cause for confusion exists, and that there is no colorable imitation of plaintiff's

trade-mark had or intended by the use of its corporate name upon its trap. Defendant urges that it has taken all reasonably required precaution to prevent confusion or mistake, and that no cause for complaint exists.

The plaintiff urges, and with great force and ability, that the acts of defendant in adopting its corporate name, in locating at Oneida, N. Y., and in putting the inscription that it did on the pan of its trap, show it had in mind the sinister and fraudulent motive to deceive and confuse the public into thinking that defendant's trap was manufactured by the plaintiff. In replying to this charge the defendant says they located at Oneida for several reasons, and point to the letter sent out to the trade, announcing that they were a new firm; that all of its reasons were proper; and that none of them can be made the basis for a claim of unfair competition. I do not think the defendant can be charged with actual fraud. Indeed, I think that defendant, in locating its factory at Oneida, could and did act on the considerations advanced by it, and that it had a right to consider farther, in selecting a place for the location of its business and factory, the vicinity, which was and is the great trap center of the world. It appeared upon the trial and argument had during the trial that plaintiff manufactures 92 per cent. of the traps of the world and 80 per cent. of the traps of the United States. That it has no prescriptive right to that vicinity, as such, will not be seriously denied.

It is further urged by plaintiff, and not denied by defendant, that its agent, in a conversation after the suit had been commenced, said defendant had won the suit brought against it by plaintiff. The papers disclose that plaintiff asked for a temporary injunction at the time the action was brought. It was denied that relief, and a layman may well have said, in passing, that defendant had won and could sell its traps.

[2] These observations we make in considering the proposition of plaintiff that defendant's corporate name stamped upon the pan of its trap is an infringement of plaintiff's trade-mark rights in that it is a colorable imitation thereof and liable to deceive and confuse the unwary buyer. To uphold this contention it is not necessary to find defendant acted fraudulently or with evil intent. If the same result follows in either case, like damage will ensue. The removal of liability to injure is the relief sought. This doctrine seems to be upheld in T. A. Vulcan v. Myers et al., 139 N. Y. 364, 34 N. E. 904.

[3] The word "Oneida," in its geographical sense, is not subject to appropriation for a trade-mark, but under the ten-year clause of the trade-mark registration statute may acquire by constant use, in connection with other words and phrases, a secondary meaning and significance for the article or commodity to which it is affixed. That is the sense in which plaintiff seeks to have it considered here. I am so considering it in an effort to solve the issue raised by plaintiff's claim of unfair competition.

[4] In Fischer et al. v. Blank, 138 N. Y. 252, 33 N. E. 1041, the court lays down a rule which appeals to me as fair, when the similarity or colorable imitation of a trade-mark is the question presented.

"The true test, we think, is whether the resemblance is such that it is calculated to deceive and does in fact deceive the ordinary buyer making his purchases when the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates."

The word "calculate" is not used in the consideration of this evidence as a planning, organizing, thinking out, or devising, on the part of the defendant, an inscription, word, or name with intention to deceive, but rather the inherent properties of such name or inscription are such that in and of themselves, to the innocently concerned, they may confuse or deceive. The idea which I wish to convey is illustrated in Words and Phrases, vol. 1, p. 943, citing Smallwood v. Commonwealth (Ky.) 40 S. W. 248. Hence I find there was not even constructive fraud here that can be imputed to the thought or design of the defendant.

I do not understand that it is necessary to find fraudulent intent on the part of defendant. In Colman v. Crump, 70 N. Y. 573, the court says:

"Neither is it necessary to establish a guilty knowledge or fraudulent intent on the part of the wrongdoer. It is sufficient that the proprietary right of the party and its actual infringement is shown."

[5] It is obvious from the evidence and an inspection of the exhibits that the defendant set out to make a trap that would compete with plaintiff's trap "Victor." It intended to use every means available to accomplish that purpose and not do violence to any rule of law of equity. It had a right to do so. The question, so far as its corporate name is involved, is: Did it get too close? In its effort to hew close to the line, and without any intention of cutting through, did it go too far? Following the general trend of the holding in Davids Co. v. Davids et al., 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, United States Court, October term, 1913, decided April 27, 1914, opinion by Mr. Justice Hughes, it must be held that it did; but in this way "Oneida Game Trap Co., Inc.," is a colorable imitation of plaintiff's trade-mark "Oneida Community, Limited," but only so by reason of its stamping on the pan. The phrase or wording in its setting, upon the round pan, taken together, effects the violation. Defendant cannot use it in that connection. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828.

"Much must depend, in every case, upon the appearance and special characteristics of the entire device; but it is safe to declare, as a general rule, that exact similitude is not required to constitute an infringement or to entitle the complaining party to protection. If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose that he was purchasing the genuine article, then the similitude is such as entitles the injured party to equitable protection, if he takes seasonable measures to assert his rights, and to prevent their continued invasion."

The defendant can stamp its corporate name on any other part of its trap and not offend against the terms of the injunction herein granted.

The plaintiff contends that the address of the defendant, "Oneida, N. Y.," stamped upon the pan of its traps, is an invasion of its (plaintiff's) rights in all of the particulars urged against the use of defend-

ant's corporate name. To indulge the plaintiff in this regard would be to say to the world no one can make traps at Oneida or in its vicinity and put their address on their traps. It would give the plaintiff a much greater monopoly than it now enjoys. It would stretch the arm of the law beyond even present conception. It would make even the careless and indifferent come to plaintiff's trap bin by force of law. Such a holding would be against public policy and against right. The idea here sought to be expressed is much better expressed in Allen B. Wrisley Co. v. Iowa Soap Co. et al., 122 Fed. 798, 59 C. C. A. 54, of opinion, where the court says:

"The duty is imposed upon every manufacturer or vendor to so distinguish the article he makes or the goods he sells from those of his rival that neither its name nor its dress will probably deceive the public or mislead the common buyer. He is not, however, required to insure to the negligent or the indifferent a knowledge of the manufacturer or the ownership of the articles he presents. His competitor has no better right to a monopoly of the trade of the careless and indifferent than he has, and any rule of law which would insure it to either would foster a competition as unfair and unjust as that promoted by the sale of the goods of one manufacturer as those of another."

Mr. Justice Hughes says in the Davids Case before cited:

"It is not to be supposed that Congress intended to prevent one from using his own name in trade or from making appropriate reference to the town or city in which his place of business is located."

Congress never will pass a law that will prevent the manufacturer putting the address of his place of business upon his commodity, unless coupled with fraudulent intent or purpose.

Even in the Stone Ale Case (English), a classic, and long the harbor of complainers, it is said: "He may mention on any ale that he makes that the ale is brewed at Stone." So here the defendant may say that his trap is made at Oneida, N. Y., and may stamp it on the pan of the trap.

Under the rule laid down in N. Y. & R. Cement Co. v. Coplay Cement Co. (C. C.) 45 Fed. 212, it would seem that the words "Oneida Trap" could be used by defendant. That is not held here. The principle is intensified by an examination of Gage-Downs Co. v. Featherbone Corset Co. (C. C.) 83 Fed. 213. In the latter case it is held that "Chicago waists" cannot be used in California to compete against "Chicago waists" used in Chicago. To be specific, the plaintiff is entitled to an injunction restraining the defendant from the use of its corporate name, as now made up, on the pan of its trap; it may place its corporate name upon any other part of its trap. It may stamp upon the pan of its trap its address, coupled with other words, substantially as follows:

Game Traps,
Triumph
No.1
Manufactured
at
Oneida, N. Y.

It may insert any of its brands in place of "Triumph." I find the address on the trap is necessary to this defendant. Without it the trapper, far afield, would not know who was the maker of the trap

[6, 7] The plaintiff asks for damages and accounting. The question of damages was left open for future consideration, but, if this decision is correct, I do not see how any damages can be estimated. Damage is allowed when intentional fraud is found. N. K. Fairbank v. Windsor, 124 Fed. 200, 61 C. C. A. 233. No fraud is found here. The only evidence that defendant's article would be taken for plaintiff's was created for the occasion, and not improperly, but, when one of plaintiff's agents held up a Victor Trap and asked for one like it, he sometimes got a Triumph, which is very much like it. That was what plaintiff wanted to occur. Such evidence is not a foundation for damages.

The prayer of the complaint in that regard is denied, but I will entertain a motion to modify the judgment so as to allow a reference on cause shown. As neither party has maintained its contention in this case, judgment is without costs to either as against the other.